## TIVOLI CONDOMINIUM ASSOCIATION, Appellant

v.

## RODIN PARKING PARTNERS, L.P., Rodin Tower Corp., Anders Schroeder, Sheldon Stein.

Commonwealth Court of Pennsylvania.

Argued Oct. 6, 2014.
Decided Jan. 30, 2015.

Steven L. Sugarman, Berwyn, for appellant.

A. Grant Phelan, Philadelphia, for appellees.

BEFORE: DAN PELLEGRINI, President Judge, and BERNARD L. McGINLEY, Judge (P), and ROCHELLE S. FRIEDMAN, Senior Judge.

OPINION BY Judge McGINLEY.

Tivoli Condominium Association (Appellant/Association) appeals from an order of the Court of Common Pleas of Philadelphia County (common pleas court) that denied Appellant's/Association's motion for summary judgment and granted Rodin Parking Partners, L.P. (Rodin), Rodin Tower Corporation (General Partner) (collectively, Appellees'/Declarant's) cross-motion for summary judgment.[1]

## I. Procedural History

The common pleas court succinctly noted that "as agreed by both parties [Appellant/Association and Appellees/Declarant] and approved by this Court ... [t]he case has been submitted on cross motions for summary judgment ... [and] the only issue before this Court is a Declaratory Judgment Action to determine the ownership and control of the Garage Unit."[2] Opinion of the Court of Common Pleas, February 11, 2013, at 2.

## II. Appellant's/Association's Motion For Summary Judgment

On June 10, 2013, Appellant/Association moved for summary judgment and asserted:

1. The Association is a Pennsylvania non-profit corporation. Bylaws of the Tivoli Condominium Association (the 'Bylaws').

2. The Association administers, manages and operates The Tivoli, a residential condominium located ... in the City and County of Philadelphia (Bylaws Article 1, Section 1.2 and the Declaration of Condominium, The Tivoli of Philadelphia, A Condominium).

3. The Tivoli is governed by a Declaration of Condominium which was recorded in the Office for the Recording of Deeds in and for Philadelphia County ... on October 19, 2005 ... (the 'Declaration'), as amended by a First Amendment to Declaration of Condominium dated August 14, 2006 and recorded in Philadelphia County ... on August 28, 2006 ... (the 'First Amendment') ....

4. Consistent with Article 1, Section 1.1 of the Declaration, all of the real property constituting the condominium known as The Tivoli has been submitted to the provisions of the Pennsylvania Uniform Condominium Act, 68 P.S. [sic] §[§] 3101[–3414] ... (the 'Act').

. . . .

6. Defendant, Rodin Parking Partners, L.P. (the 'Declarant'), is a Pennsylvania limited partnership ....

. . . .

10. Co–Defendant, Rodin Tower Corp. ... is a corporation ....

11. At all relevant times hereto, Rodin Tower Corp. was a partner in Rodin Parking Partners, L.P. ....

## II. *INTRODUCTION*

19. In violation of the Act, the Declarant used the Declaration in an effort to

---

1. Anders Schroeder (Schroeder), Daniel Levin (Levin), and Sheldon Stein (Stein) were also named in the above caption and were Appellees'/Declarant's initial appointees to Appellant's/Association's Executive Board.

2. The common pleas court also noted that "[t]his case entails 7 separate issues. However 6 of the 7 issues are scheduled to be heard by an arbitration panel." Opinion at 2.

attempt to reserve for itself the power to create a so-called 'Garage Unit.'

20. *Through the recording of a 'Deed of Confirmation' ... the Declarant has attempted to create a Garage Unit and convey ownership of certain common element parking spaces, owned in common with all unit owners, directly and solely to the Declarant ....* (Emphasis added.)

21. *By and through its recording of the Deed of Confirmation, the Declarant has asserted possession and control over forty-six Common Element parking spaces located in the Garage of the Tivoli.* (Emphasis added.)

22. *By and through its recording of the Deed of Confirmation, the Declarant has asserted possession and control over forty Common Element parking spaces located on the Tivoli common elements outside the Garage.* (Emphasis added.)

23. *.... [T]he Declarant has also asserted possession and control over approximately 12 to 15 storage lockers (the 'Storage Lockers') located in the Garage of the Tivoli.* (Emphasis added.)

. . . .

### III. BACKGROUND

. . . .

28. *The Tivoli contains 114 residential condominium units....* (Emphasis added.)

. . . .

30. *The Declarant has conveyed, sold or transferred 101 of the residential condominium units in the Tivoli ....* (Emphasis added.)

31. *The Declarant has continued to hold title to thirteen (13) of the residential condominium units in the Tivoli ....* (Emphasis added.)

32. *The Declarant has leased all 13 of the condominium units it owns in the Tivoli for use as residences ....* (Emphasis added.)

. . . .

34. *The Declarant claims that it has assigned one Limited Common Element parking space in the Garage to each of the 13 residential condominium units it owns in the Tivoli ....* (Emphasis added.)

. . . .

47. The Declarant has not obtained the consents [sic] of any of the unit owners to the creation of the Garage Unit nor to any changes to the common interests assigned to the units ....

. . . .

50. The Declarant is engaged in leasing the Common Element Parking Spaces

. . . .

### IV. THE UNIFORM CONDOMINIUM ACT

. . . .

60. Under and subject to Section 3209(a) of the Act, Limited Common Elements are intended to be allocated to a Unit, and the allocation may not be altered without the consent of the Owners whose Units are affected.

. . . .

### VI. THE DECLARATATION, THE FIRST AMENDMENT AND THE DEED OF CONFIRMATION

. . . .

107. *As demonstrated above, the Declarant does not possess the power under the Declaration or the Act to record a Deed of Confirmation or any other instrument to establish the Garage Unit.* (Emphasis added.)

. . . .

### VIII. CONCLUSIONS OF LAW

. . . .

188. *The Parking Spaces which have not been acquired by purchasers of*

*units are, and must remain, in part of The Tivoli's Common Elements.* (Emphasis added.)

189. *The Parking Spaces which have not been allocated to purchasers of units at The Tivoli are, and must continue to remain, part of The Tivoli common elements.* (Emphasis added.)

. . . .

204. The Declarant has asserted control over all of the Storage Lockers.

. . . .

**Wherefore,** Plaintiff [Appellant/Association] . . . respectfully requests that this Honorable Court enter an order granting summary judgment in its favor, including an award of declaratory relief in favor of the Association, as follows:

. . . .

(b) *Declaring that except for 13 Limited Common Element parking spaces to be designated by the Declarant and assigned to the 13 Units owned by the Declaration, the underground parking garage, as well as all of those parking spaces which have not been assigned as Limited Common Elements appurtenant to Residential Units owned by Owners, are Common Elements of The Tivoli* (Emphasis added.);

. . . .

(d) *Directing the Defendants [Appellees/Declarant] to relinquish any and all interests in and control over the Parking Spaces within the Condominium, except for the thirteen (13) spaces as noted above* (Emphasis added.);

. . . .

(h) Directing the Defendants [Appellees/Declarant] to immediately relinquish, assign and turn over all control and use of the Storage Lockers to the Association

. . . .

Plaintiff's Motion for Summary Judgment, June 10, 2013, Paragraphs 1–4, 6, 10–11, 19–23, 28, 30, 32, 34, 47, 50, 60, 107, 188–189, 204, and Wherefore (b), (d), and (h) at 1–5, 7–8, 16, 24–25, and 26–27; Reproduced Record (R.R.) at 136a–40a, 142a–43a, 151a, 159a–60a, and 161a–62a.

Appellees/Declarant responded:

This case concerns a fully disclosed and legally created Garage Unit consisting of eighty-six (86) parking spaces in the Tivoli Condominium . . . in Philadelphia, Pennsylvania. *Pursuant to every document prepared, distributed, and/or filed in connection with the creation of the condominium, plaintiffs [Appellant/Association] and its individual Unit Owners were informed, and in fact, agreed to Declarant's creation, ownership, and retention of the Garage Unit.* (Emphasis added and footnote omitted.)

Nevertheless, the Association . . . now claims it is entitled to ignore (i) the plain language of the Public Offering Statement, (ii) the plain language of the Declaration of Condominium, and (iii) the plain language of the Neighborhood Agreement . . . . To be sure, even though each and every document provided to unit owners identified and described the Garage Unit, Plaintiff [Appellant/Association] would have this Court believe it was never informed of the creation or existence of the Garage Unit. (Footnote omitted.)

Rodin Parking Partners, L.P., and Rodin Tower Corp.'s Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment, July 17, 2013, at 1; R.R. at 594a. (Footnotes omitted from caption.) [3]

---

**3.** Appellees/Declarant stated in their response in opposition to Plaintiff's Motion for Sum-

mary Judgment that "[f]or the reasons stated in the attached memorandum of law, which is

### III. Appellees'/Declarant's Motion for Summary Judgment

On June 17, 2013, Appellees/Declarant filed a cross-motion for summary judgment and asserted:

. . . .

### I. Factual and Procedural Background

. . . .

2. The Association instituted this action ... against Defendants [Appellees/Declarant] through writ of summons filed on or about March 18, 2010.

. . . .

6. Rodin Parking Partners, L.P. ('Declarant') is the developer of the Tivoli, a condominium complex located ... in Philadelphia . . . .

7. *Declarant intended that the Tivoli include up to 121 residential condominium units, some of which would 'include a parking space as a limited common element,' and a 'commercial Garage Unit consisting of those portions of the two-story parking garage located beneath the residential building which were not allocated to residential units as limited common elements,' which would be retained and operated by the Declarant* . . . . (Emphasis added.)

8. *Declarant therefore planned and constructed a garage consisting of one level of underground parking with approximately 121 parking spaces, and a second aboveground level of parking with approximately ninety additional parking spaces* . . . . (Emphasis added.)

9. *Pursuant to the POS [Public Offering Statement], the right to use individual parking spaces on each level were [sic] to be assigned to purchasers of*

*Residential Units desiring to purchase 'a dedicated parking space as a Limited Common Element appurtenant to their Residential Unit' at an additional cost and '[a]ll remaining spaces on either level, and the driveways and other areas of the Garage, will constitute the Garage Unit.'* . . . . (Emphasis added.)

10. *Storage units constructed and located in the Garage Unit were to be 'Limited Common Elements appurtenant to the Garage Unit,' which could be 'rented out to Residential Unit Owners at such rates as the Garage Unit Owner may determine'* . . . . (Emphasis added.)

. . . .

18. *Every Residential Unit purchaser had the option to purchase a parking space with the purchase of a Residential Unit* . . . . (Emphasis added.)

19. *Unit Owners thus had actual, constructive, and patent notice of the Garage Unit's existence and possession of parking spaces.* (Emphasis added.)

. . . .

27. *Each 'Unit Owner is responsible for 100% of Limited Common Expenses allocable to Limited Common Elements serving that Unit and no other Unit'* . . . . (Emphasis added.)

28. The Declaration further stated that 'the Owner of the Garage Unit may from time to time sell licenses to use parking spaces in the Garage Unit to Residential Unit owners *and to the public* ....' (Emphasis in original.)

. . . .

34. *Each year, the Garage Unit has been assessed as a separate unit by the City of Philadelphia for its property taxes, and Declarant had paid the prop-*

incorporated herein by reference, Defendants Rodin Parking Partners, L.P. and Rodin Tower Corp. oppose Plaintiff's motion for summary judgment." Rodin Parking Partners,

L.P., and Rodin Tower Corp.'s Response in Opposition to Plaintiff's Motion for Summary Judgment, July 17, 2013, at 1; R.R. at 592a.

*erty taxes on the Garage Unit each year . . . . (Emphasis added.)*

35. *There is no dispute that Declarant has paid its allocated share of expenses . . . . (Emphasis added.)*

. . . .

## IV. Argument

. . . .

## A. The Parking Spaces Are Not Common Elements

. . . .

47. *The Garage Unit therefore is not a common element under the plain language of the Tivoli Declaration. (Emphasis added.)*

48. *Indeed, parking spaces are by default part of the Garage Unit and only become limited common elements once they are purchased by Residential owners . . . . (Emphasis added.)*

. . . .

53. *All Residential Unit owners had proper notice of Declarant's intent to create and retain the Garage Unit through the Public Offering Statement, the Neighborhood Agreement, and the Declaration, which each and every Unit Owner 'ratified and accepted' by they [sic] purchased their unit.. See Decl., § 1.2. (Emphasis added.)*

54. *There is no dispute of material fact that the Garage Unit was properly created that the parking spaces are not common elements. (Emphasis added.)*

. . . .

## B. The Storage Spaces Are Not Common Elements

56. *For the same reason that the parking spaces are not common elements, any storage spaces within the Garage Unit are not Common Elements. (Emphasis added.)*

57. *The Storage Spaces within the Garage Unit are limited common elements*

*appurtenant to the Garage Unit . . . . (Emphasis added.)*

. . . .

## C. The Garage Unit Was Validly Created

. . . .

65. *As a matter of law, the Garage Unit description is sufficient and the Association's claims otherwise fail as a matter of law. (Emphasis added.)*

. . . .

## D. Statutory Laches Bars The Association's Attack On The First Amendment To The Declaration

. . . .

79. The Association's attack on the First Amendment to the Declaration is time-barred . . . .

. . . .

## E. The Association's Action To Strike The Deed Of Confirmation Is Procedurally Defective And Meritless

. . . .

85. *The Deed of Confirmation is not governed by the Act or the·Declaration, and Declarant did not need the consent of the other unit owners to record such a document. (Emphasis added.)*

. . . .

## F. The Association Is Not Entitled To An Order Directing Rodin Parking Partners To Relinquish Control Over The Garage Unit

. . . .

97. The Association has not identified any deed or other document that conveys ownership of the Garage Unit to it, while Declarant is able to rely on its valid, recorded deed to affirm its right of title and access to and possession of the Garage Unit, which identifies the Garage Unit with a separate tax folio number.

98. *The Declarant has also maintained an uninterrupted history of exclusive payment of the property taxes for the Garage Unit.* (Emphasis added.)

Motion for Summary Judgment of Defendants Rodin Parking Partners, L.P., and Rodin Tower Corp., June 17, 2013, Paragraphs 2, 6–10, 18–19, 27–28, 34–35, 47–48, 53–54, 56–57, 65, 79, 85, and 97–98 at 2–4, 6–7, 9–12, 14–15, and 17; R.R. at 512a–14a, 516a–17a, 519a–22a, 524a–25a, and 527a.

Appellant/Association responded and denied Appellees'/Declarant averments "as conclusions of law to which no response is required . . . ." Plaintiff, Tivoli Condominium Association's Answer in Opposition to Defendants', Rodin Parking Partners, L.P. and Rodin Tower Corp., Motion for Summary Judgment, July 17, 2013, Paragraphs 1–99 at 2; R.R. at 616a–17a.

### IV. The Common Pleas Court's Disposition

The common pleas court denied Appellant's/Association's request for summary judgment and granted summary judgment in favor of Appellees/Declarant. The common pleas court noted:

Defendants [Appellees/Declarant] intended to develop 114 Residential Units in the Tivoli with a two section parking unit: one section of the unit is enclosed and the other section of the unit is outdoors. *This parking unit was identified as the 'Garage Unit.'* The unit consists of 121 parking spaces underground and approximately 90 additional parking spaces above ground.

The Defendants [Appellees/Declarant] have conveyed, sold, or transferred 101 of the condominium units and holds title to 13 of the units which the Defendants [Appellees/Declarant] manage as Owner and Landlord. Each of the Residential Units owned by the Defendants [Appellees/Declarant] has one assigned Limited Common Element parking space in the Garage Unit.

. . . .

*. . . Furthermore, the POS [Public Offering Statement] stated that 'Declarant currently intends to retain and operate a commercial Garage Unit consisting of those portions of the two-story parking garage located beneath the residential building which are not allocated to residential units as limited common elements.'* . . . .

The narrative description of the Garage Unit, along with a description of the intended use of the Garage Unit, was in compliance with the PUCA [Condominium Act]. 68 Pa.C.S.A. [sic] § 3402.

. . . .

*. . . A sufficient description of the Garage Unit was provided along with provisions describing the Unit as being subdivided into leasable parking spaces to be, if purchased by Residential Unit Owner, Limited Common Elements appurtenant to the Residential Unit.* The remainder of the parking spaces could be leased to the general public. The Declaration then clearly describes the Limited Common Element interest allocations. Moreover, the Declaration states that the owner of the Garage Unit Owner would own and operate any features within the Garage Unit, including the Storage Lockers. The Garage Unit was never classified as a Common Element nor were any ownership and operation rights provided to Plaintiffs [Association].

. . . .

*The Declarant owns the Residential Units until leased by a purchaser. Similarly, the Garage Unit is owned by the Declarant unless, and until, purchased.* As stated above, subdividing the Unit into parking spaces was not inconsistent with the PUCA [Condominium Act]. It is incorrect to consider the

Garage Unit as a Common Element when the Declaration classified the Garage Unit as a Unit consisting of parking spaces to be allocated as Limited Common Elements appurtenant to the Residential Unit while the remainder could be leased to non-residents. . . . *The [Appellees/Declarant] intentions for the Garage Unit were clearly contemplated within the Declaration, the POS, the First Amendment, and the Deed of Confirmation.* Additionally, the Residential Leasing Agreement notified the potential resident owner of this intention and provided the purchaser with a chance to opt for a parking space within the Garage Unit. Therefore, this Court declares that the Garage Unit is rightfully owned by the [Appellees/Declarant's]. (Citation omitted and emphasis added.)

Opinion at 7–8.[4]

## V. Issues

### A. Did The Declaration Legally Create A Garage Unit?

■ Initially, Appellant/Association contends[5] that the common pleas court erred when it determined that the Declaration created a Garage Unit which included numerous indoor and outdoor parking spaces under the exclusive ownership and control of the Appellees/Declarant. Specifically, Appellant/Association contends that Appellees/Declarant failed to comply with the mandatory requirements of the Condominium Act when it attempted to create a Garage Unit with the filing of the Declaration.

Appellees/Declarant respond that the Declaration adequately complied with the requirements of the Condominium Act because the Declaration described the Garage Unit boundaries which included the plats and plans that sufficiently identified the First Floor and Cellar Plan as the Garage Unit.

Section 3201 of the Condominium Act, 68 Pa.C.S. § 3201, provides that *"[a] condominium may be created . . . only by recording a declaration executed, in the same manner as a deed . . . ."* [6] (Emphasis added.) Section 3103 of the Condominium Act, 68 Pa.C.S. § 3103, defines the term

---

4. On February 11, 2014, an Addendum to the Opinion was entered and stated "Judge [Ricardo C.] Jackson having retired from the Bench, this Court [Judge Idee Fox] hereby adopts his opinion." Addendum to Opinion, February 11, 2014, at 1.

5. In *Gmerek v. State Ethics Commission*, 751 A.2d 1241, 1249 n. 17 (Pa.Cmwlth.2000), this Court stated:

    A motion for summary judgment may be properly granted only in those cases where the record clearly shows that there exists no outstanding issues of material fact and the moving party is entitled to judgment as a matter of law. *L.J.S. v. State Ethics Commission*, 744 A.2d 798 (Pa.Cmwlth.2000). In disposing of a motion for summary judgment, the record must be viewed in a light most favorable to the opposing party, and all doubts as to the existence of a material fact must be resolved in favor of the non-

moving party. *Id.* Thus, a motion for summary judgment requires a determination whether there exists a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Casner v. American Federation of State, County and Municipal Employees*, 658 A.2d 865 (Pa.Cmwlth.1995). With these standards in mind, we consider the instant cross-motions for summary judgment . . . .

6. Section 3103 of the Condominium Act, 68 Pa.C.S. § 3103, defines the term "condominium" as *"[r]eal estate, portions of which are designated for separate ownership and the remainder of which is designated for common ownership solely by the owners of those portions . . . ."* Section 3103 of the Condominium Act also defines the term "common element" as "[a]ll portions of a condominium other than the units."

"unit" as "[a] portion of the condominium designated for separate ownership, the boundaries of which are described pursuant to Section 3205(4) (relating to contents of declaration; all condominiums)." Section 3205(4) of the Condominium Act, 68 Pa.C.S. § 3205(4), provides that "[t]he declaration for a condominium must contain: [a] description or delineation of the boundaries of each unit including the unit's identifying number." The Declaration adequately complies with Section 3205(4) of the Condominium Act because it clearly contained a description of the boundaries of each unit. Specifically, Article III of the Declaration provides:

### UNIT BOUNDARIES

. . . .

Section 3.2 *Unit Title Lines.*

. . . .

(d) The title lines of the Garage Unit are situated as shown on the Plans (as amended once all Residential units have been sold and the final number of parking spaces contained in the Garage Unit is determined), *and extend: from the plane formed by the Unit-side surface of such exterior walls of the Building as adjoin such Unit inwards; the Unit-side of such structural member on the ceiling of the Unit downwards; and the Unit-side of such structural member on the floor of the Unit upwards.* The Garage Unit also includes all appurtenant features of the garage, including, without limitation, mechanical fans, shafts, louvers and ducts, whether or not located within the title lines set forth above. (Emphasis added.)

Additionally, this description is sufficient to create a valid unit under the Condominium Act as noted in the Uniform Law Comments to Section 3205(4) of the Condominium Act, 68 Pa.C.S. § 3205(4), which states:

*Section 2–102 [Uniform Act] makes it possible in many projects to satisfy paragraph (a)(5) of this section by merely providing the identifying number of the units and stating that each unit is bounded by its ceiling, floor, and walls* . . . [t]he plat and plans will show where those ceilings, floors, and parametric walls are located . . . . (Emphasis added.)

Further, Exhibit B of the Declaration provides:

### TO PUBLIC OFFERING STATEMENT OF THE TIVOLI OF PHILADELPHIA, A CONDOMINIUM

### *PLANS AND PLATS*

. . . .

3. The Plan titled "A101, First Floor Plan," shows the upper level of the Garage, as well as some street level Residential Units. *Portions of each parking level will consist of Limited Common Elements for Residential Units whose purchasers elect to purchase a parking space, while the remainder of each level will be part of the Garage Unit.* At present the Declarant does not know how many Residential Unit purchasers will elect to purchase parking spaces as Limited Common Elements appurtenant to their Residential Units. Accordingly, after all Residential Units have been sold, *Declarant intends to record a final revised Plan of the garage showing the exact locations of the Garage Unit and the parking spaces which have been allocated as Limited Common Elements.* (Emphasis added.)

Also, the Cellar Floor Plan shows the numbered parking spaces in addition to the percentage interest of the Garage Unit both before and after conversion of the convertible real estate. *See* Declaration, Exhibit B, Cellar Floor Plan at 1, Declara-

tion C–1 Percentage Interests Following Conversion of Convertible Real Estate and Tivoli Townhouse Condominium (Common Interest) at 1; R.R. at 246a and 255a–259a.[7] The provisions of the Declaration provides Declarant with the ability to amend new plans once all the Units are sold. "[O]ther sections of the PUCA [Condominium Act] not referenced in ... the list of special declarant rights ... provide flexibility in the terms of a declaration with regard to the allocation of limited common elements by either the declarant or association." *MetroClub Condominium Association v. 201–59 North Eighth Street Associates, L.P.*, 47 A.3d 137, 152 (Pa.Super.2012).

There is no merit to Appellant's/Association's argument that "[a]t most, the Declaration provides that the Garage Unit will be created in the future ... [e]xcept for units derived from convertible or additional real estate, the UCA [Condominium Act] does not contemplate nor permit a unit to be created at some future time. 68 Pa.C.S. § 3205(4)." Brief of Appellant at 27.

The Garage Unit was validly created when the Declaration was recorded pursuant to the Condominium Act. The Declaration permitted that portions of the Garage Unit would be subdivided into common elements as noted by the Uniform Law Comment to Section 3103 of the Condominium Act:

> The right 'to create units, common elements, or limited common elements' is frequently useful in commercial or mixed-use condominiums where the declarant needs to retain a high degree of flexibility to meet the space requirements of prospective purchasers who may not approach him until the condominium has already been created. For example, an entire floor of a high-rise building may be intended for commercial buyers, but the declarant may not know in advance whether one purchaser will want to buy the whole floor as a single units [sic] or whether several purchasers will want the floor divided into several units, separated by common element walls and served by a limited common element corridor. This development right is sometimes useful even in purely residential condominiums, especially those designed to appeal to affluent buyers. Similarly, the development rights 'to subdivide units or convert units into common elements' is most often of value in commercial condominiums, but can occasionally be useful in certain kinds of residential condominiums as well.

As a result, the Declaration lawfully reserved to Appellees/Declarant the right to subdivide and convert portions of the Garage Unit to limited common elements appurtenant to certain Units by stating that certain parking spaces would be required by purchasers of Residential Units as limited common elements. "[A] unit may be subdivided into two or more units or, in the case of a unit owned by a declarant may be subdivided or converted into two or more units, common elements, or a

7. The percentages are as follows:

| | Square Footage | % Common Interest |
|---|---|---|
| Total Phase I | 57,281 | 32.9713% |
| Total Phase II | 106,245 | 61.1248% |
| Total Phases | 163,526 | 94.0961% |
| Garage | 4,167 | 5.9039% |
| Common Area | 40,147 | |
| | 207,839 [sic] | 100.0000%. |

combination of units and common elements." 68 Pa.C.S. § 3215(a).

In conclusion, the common pleas court properly determined that the Declaration squarely complied with the requirements of the Condominium Act and as such the Garage Unit was validly created.

### B. *Was The Deed Of Confirmation Inconsistent With The Condominium Act And The Declaration?*

■ Appellant/Association next contends that the Deed of Confirmation created an additional twenty-two parking spaces to the sixty-four parking spaces for a total of eighty-six parking spaces of which Appellees/Declarant claimed ownership and control. Appellant/Association states that the Amended Declaration only reflects a total of "64 spaces." Appellant/Association argues that there is no authority either under the Condominium Act or the original Declaration which authorized the Appellees/Declarant to unilaterally increase the number of parking spaces allocated to the Garage Unit via the recording of the Deed of Confirmation.

Appellees/Declarant respond that "the Deed of Confirmation ... is not governed by the [Condominium] Act or the Declaration ...."[8] Amended Brief of Appellees at 22.

As noted, the Deed of Confirmation was a document which confirmed that there would be extra parking spaces added to the Garage Unit:

**WHEREAS,** the Declaration of Condominium created Residential Units and a Garage Unit in the Property;

**WHEREAS,** *The Declaration of Condominium provides that the Garage Unit will consist of, inter alia, those parking spaces not acquired by purchasers of Residential Units, and that certain other parking spaces will be Limited Common Elements appurtenant to the Garage Unit;* (Emphasis added.) and

**WHEREAS,** Grantor [Appellees/Declarant] now wishes to confirm the parking spaces which constitute the Garage Unit (such spaces being described by number in Exhibit B to the Declaration).

. . . .

**THOSE CERTAIN** parking spaces in the Condominium which are listed on Exhibit B[9] attached hereto, and which

---

8. Appellees/Declarant also raise a procedural defect argument. Appellees/Declarant state that the Deed of Confirmation was valid and that Appellant's demand to strike the Deed of Confirmation was procedurally defective. Specifically, Appellees/Declarant suggest that "Appellant [Association] failed to commence an action in mandamus pursuant to Pa. R.C.P. [Nos.] 1091–1100, which would be required in order for a judge of the Court of Common Pleas to require the Commissioner of the Philadelphia Department of Records to perform such an act." Amended Brief of Appellees at 22. Here, Appellees/Declarant submit that Appellant/Association sought to "strike the Deed of Confirmation from the records of Philadelphia County" without naming the Recorder of Deeds as a defendant in its declaratory judgment action.

Pa. R.C.P. No. 1094(a) provides that "[w]hen an action is commenced to compel performance of a public act or duty by a political subdivision of the Commonwealth [Philadelphia County Department of Records], it shall be sufficient to name as defendants such officers in their official capacities as are concerned in the act or duty." Appellees conclude that Appellant was not entitled to an order striking the Deed of Confirmation as a matter of law.

The common pleas court did not strike the Deed of Confirmation based upon a procedural defect but found that the Deed of Confirmation was valid and supported Appellees' "intentions for the Garage Unit ...." Opinion of the Common Pleas Court at 7.

9. Exhibit B provides:

List of Parking Spaces Constituting the "Garage Unit"
105 118 142 159 L2H4

collectively constitute the Garage Unit, with the parking spaces appurtenant thereto as Limited Common Elements. Deed of Confirmation, July 12, 2009, at 2; R.R. at 395a.

Obviously, the Deed of Confirmation confirmed the number of total parking spaces created after it was determined how many parking spaces were to be allocated to the sale of individual residential units as reflected by the First Amendment to the Declaration of Condominium.[10] This fact was well-known to all members of the Association. Any parking spaces not purchased by Residential Owners would remain part of the Garage Unit.[11]

The common pleas court properly found that the Deed of Confirmation was consistent and did not violate either the Condominium Act or the Declaration but merely confirmed the validity of the Garage Unit's final total of parking spaces.

## C. Was The Common Pleas Court's Decision Adverse To Public Policy?

■ Lastly, Appellant/Association argues that Appellees/Declarant unfairly derived substantial economic benefit from Association members by leasing many of the parking spaces to non-residents and to commercial tenants in violation of public policy.

Appellees/Declarant respond that "[i]n actuality, public policy favors affirming the trial court's opinion, which upholds a validly created and disclosed condominium

---

> 107 119 143 160 260
> 108 122 148 161
> 109 123 151 162
> 110 124 152 163
> 111 128 153 164
> 112 129 154 165
> 113 131 155 L1H1
> 114 135 156 L1H2
> 115 140 157 L1H3
> 116 141 158 L1H4.
> Limited Common Elements Appurtenant to Garage Unit (all located outside the parking garage):
> 178E 188E 198E 208E
> 179E 188E 198E 208E
> 180E 190E 200E 210E
> 181E 191E 201E 211E
> 182E 192E 202E 212E
> 183E 193E 203E 214E
> 184E 194E 204E 215E
> 185E 195E 205E 216E
> 186E 196E 206E L1H5E
> 187E 197E 207E L1H6E
> [For a Total of eighty-six parking spaces].
> Deed of Confirmation, Exhibit B at 6; R.R. at 400a.

10. First Amendment to the Declaration of Condominium relevantly provides:

> In addition, Section 14.1 of the Declaration permits [Appellees/]Declarant to amend the Declaration if necessary in the judgment of the [Appellees/]Declarant to correct or sup-

plement any provision of the Declaration which is defective or inconsistent with any other provision thereof. *At the time the Declaration was recorded, the allocation of parking spaces to individual Units, as Limited Common Elements, could not be determined because the individual Unit Owners had not then determined how many parking spaces they wished to acquire. [T]hat determination has now been made, and Declarant accordingly wishes to amend the Declaration to correct the Percentage Interest of each Unit to reflect the number of parking spaces which are appurtenant to each Unit as Limited Common Elements.* (Emphasis added.) First Amendment to Declaration of Condominium, August 14, 2006, at 1; R.R. at 287a.

11. Additionally, the Deed of Confirmation did not change the Residential Unit Owners' interest but, in fact, was used by Appellant/Association to access each Unit Owners' share of common expenses which was acknowledged by the parties in their Stipulation. Paragraph 2 of the Stipulation of Facts provides that "[f]rom 2006 until the present, each owner's assessment for common expenses was made using the percentage interest ascribed to each unit in Exhibit 'C' to the First Amendment to Declaration of Condominium, dated August 14, 2006." Stipulation of Facts and for the Admission of Exhibits, June 11, 2013, at 1; R.R. at 211a.

plan." Amended Brief of Appellees at 24. Appellees/Declarant asserts that "[n]o member of the Association had any legitimate expectation that the Association would own any parking spaces ...." Amended Brief of Appellees at 24. This Court agrees.

Article II, Section 2.2(j) (Terms Specifically Defined) of the Declaration, defines the term " 'Garage Unit' to mean the Unit consisting of (i) those garage parking spaces located in the parking garage under the Building *which are not acquired by purchasers of Residential Units* as limited common elements appurtenant to their Residential Units ...." [12] (Emphasis added.) Declaration at 6; R.R. at 219a. Essentially, Section 2.2(j) of the Declaration provides that all parking spaces are by default part of the Garage Unit and only become Limited Common Elements once they are purchased by Residential Unit Owners.

Additionally, the Declaration clearly states the responsibility of Appellant/Association, Residential Unit Owners, and Appellees/Declarant are in regards to expenses and insurance associated with their percentage of respective property ownership. Specifically, Article V, Section 5.3 (Limited Common Expenses) of the Declaration provides:

(a) *Each Unit Owner shall be responsible for 100% of the Limited Common Elements serving that Unit and no other Unit.* Each Unit Owner shall be responsible for his or her pro-rata portion of the Limited Common Expenses allocable by the Executive Board to the Limited Common Elements which serve that Unit and other Units, but less than all of the Units. (Emphasis added.)

(b) The Garage Unit shall be solely responsible for all expenses for gas, electricity, janitorial service, mechanical ventilation, pest control and trash removal for the Garage Unit. *These expenses shall be borne by the Unit Owner of the Garage Unit and shall not be included in Common Expenses.*[13] (Emphasis added.)

Also, Appellant's/Association's assertion that it is unfairly on the hook regarding any possible liability concerning the Condominium property is a reach as evidenced by Article VIII, Section 8.1 (Insurance) of the Bylaws of Tivoli Condominium Association. Article VIII, Section 8.1 provides:

(a) The Executive Board shall obtain and maintain on behalf of the Association (to the extent obtainable) the following insurance:

(i) *'All-risks' casualty insurance in the form generally provided in Philadelphia County ... insuring the entire Property, including all Units, Common Elements and fixtures and appliances included in each Unit on the date of the*

---

12. Article IV, Section 4.2 (Limited Common Elements) of the Declaration provides:

The Limited Common Elements of the Condominium are as follows:

(a) those Limited Common Elements described in Section 3202(4) of the [Condominium] Act;

(b) those parking spaces in the Garage which are purchased by purchasers of Residential Units as Limited Common Elements appurtenant to their Units;

(c) that portion of the Land marked on the Plans as a Limited Common Element appurtenant to the Garage Unit, *which may be leased by the Owner of the Garage Unit on a short-term basis to an affiliate of the Garage Unit Owner for use by neighborhood businesses as retail parking, or to the general public.* ... (Emphasis added.)

Article IV, Section 4.2(a-c) of the Declaration at 9–10; R.R. at 222a–23a.

13. The storage units serve only the Garage Unit and as a result Appellees/Declarant are responsible for the costs and maintenance of this area.

*first sale thereof by Declarant and replacements thereof* .... (Emphasis added.)[14]

Bylaws of Tivoli Condominium Association, November 12, 2003, Article VIII, Section 8.1(a)(i) at 18; R.R. at 331a. The cost of this insurance is included in the Common Expense which Appellee/Declarant is assessed annually based upon its percentage of ownership. *See* Exhibit E to the Public Offering Statement of the Tivoli of Philadelphia, A Condominium, Proposed First Annual Operating Budget at 1; R.R. at 340a.[15]

### VI. Conclusion

First, the Declaration validly created a Garage Unit owned by Appellees/Declarant for the commercial parking from the remaining parking spaces that were not purchased by the owners of the Condominium Units. Second, the Deed of Confirmation validly confirmed the total number of remaining parking spaces that would be part of the Garage Unit and was not in contravention of either the Declaration or the Condominium Act. Third, the creation of the Garage Unit was not in violation of public policy and the common pleas court properly determined that the Garage Unit

**14.** Further, Section 3307(a) of the Condominium Act, 68 Pa.C.S. § 3307(a), provides:

> General rule.—Except to the extent provided by the declaration or section 3312(d) (relating to insurance), *the association is responsible for maintenance, repair and replacement of the common elements and each unit owner is responsible for maintenance, repair and replacement of his unit.* Each unit owner shall afford to the association and other unit owners and to their agents or employees, access through his unit reasonably necessary for these purposes. *If damage is inflicted on the common elements or any unit through which access is taken, the unit owner responsible for the damage, or the association if it is responsible is liable*

was validly created and owned by Appellees/Declarant.

Accordingly, this Court affirms.

### ORDER

AND NOW, this 30th day of January, 2015, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is affirmed.

*for the prompt repair thereof.* (Emphasis added.)

**15.** Note 4 of the Public Offering Statement provides:

> The Common Expense Assessment allocated to the Garage Unit in the following breakdowns will be re-allocated in part to those Residential Unit Owners who acquire a parking space as Limited Common Elements. Each such Residential Unit Owner's owing a parking space will have his or her Common Expense Assessment of the Garage Unit equal to one divided by the total number of parking spaces in the Garage.

Exhibit E to Public Offering Statement, Note 4 at 1; R.R. at 340a.