# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| John R. Cellucci and Edna H. Cellucci, his wife, | : | | |
| | : | | |
| Appellants | : | No. 2090 C.D. 2015 | |
| | : | Argued: May 13, 2016 | |
| v. | : | | |
| | : | | |
| Laurel Homeowners Association | : | | |

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

**OPINION**
**BY JUDGE SIMPSON**                    **FILED: July 6, 2016**

In this long-running legal dispute about the number and nature of assessable units owned, John R. Cellucci and his wife, Edna H. Cellucci (Owners) appeal from an order of the Court of Common Pleas of Berks County (trial court) that sustained preliminary objections filed by the Laurel Homeowners Association (Association) to Owners' declaratory judgment action and dismissed their suit with prejudice.

Owners sought a declaration that the Association's assessment fee claims against their properties lacked a valid legal basis. Also at issue in this appeal is the trial court's denial of Owners' petition for recusal alleging bias on the part of the trial judge in an earlier related action. Owners contend the trial court abused its discretion by denying Owners' petition for recusal where the trial judge failed to make a conscientious determination of his ability to assess the case in an impartial manner. Owners further assert the trial court erred in sustaining the Association's preliminary objections based on the alleged existence of a prior

pending action, and the doctrines of collateral estoppel and *res judicata*, where the Association commenced no past or pending action to enforce its statutory lien claim and did not obtain a judgment that would support an order of attachment or execution. For the reasons that follow, we affirm in part and reverse in part.

## I. Background
### A. 1979-2003

Since 1979, Owners owned three of the four townhouse parcels in Building 26 of the Laurel Springs development in Exeter Township, Berks County. The unusual configuration of this Building is at the heart of the controversy. At oral argument, the parties represented that Building 26, built by a previous developer, is unique in comparison to the rest of the Laurel Springs development. See also Appellants' Br. at 7. Building 26 consists of four parcels, and each parcel contains two dwelling units, one on the first floor and one on the second floor. Owners characterize their holdings as *three stacked townhouses*, while the Association characterizes Owners' property as *six condominiums*.

From 1979 through 1988, Owners assert, the Association assessed them monthly at the *townhouse* rate for their *three* parcels. However, beginning in January 1989, the Association began assessing and invoicing Owners at the monthly *condominium* rate for *six* units. Appellants' Br. at 8. Thus, Owners claim the Association overcharged them from 1989. Id. at 8-9.

Conversely, the Association asserts Owners paid six assessments for the period of 1979 until 2003. Appellee's Br. at 2. According to the Association,

2

in 2003, Owners, without consent, stopped paying assessments for six condominium units and began paying the townhouse rate for three units. Id.

## B. 2003 Legal Action (First Action)

In December 2003, the Association commenced the first legal action between the parties. The Association sought to assess Owners' property as six separate condominiums for the purpose of imposing the Association's condominium fees. In response, Owners filed a counterclaim for excess assessments for the period of January 1989 through December 2002.

## C. 2005 Agreement

In March 2005, the parties settled the first action and executed a Settlement Agreement and Release (2005 Agreement). Paragraph 1 of the 2005 Agreement states (with emphasis added):

> [Association] agrees to withdraw with prejudice all claims of any right to collect condominium assessments from [Owners] for real estate that they own in Building 26 of Laurel Springs development unless and until such real estate is converted to condominium units in accordance with applicable Pennsylvania law.

Tr. Ct., Slip. Op., 11/24/15, at 2.

## D. Declarations of Air Space Rights and Easements (2007)

In July 2007, unbeknownst to the Association, Owners recorded six "Declaration of Air Space Rights and Easements." See Reproduced Record (R.R.) at 21a-31a. Owners' stated purpose for filing was their intent to sell the "stacked

3

townhouses" and set forth the rights and duties of the owners of the "stacked townhouses" with respect to one another.  R.R. at 22a.

**E. Assessment Liens (Second Action)**

In 2014, the Association learned of Owners' 2007 deed transfers.  In April 2014, the Association filed multiple notices of fee claims for monthly condominium assessments, and related attorney and filing fees, on Owners' properties from September 2007 through December 2014.  See R.R. at 235a-58a. The assessment fee claims totaled $27,180.

**F. Owners' Petition to Strike Fee Claims**

Thereafter, Owners filed a petition to strike the multiple assessment fee claims, enforce the 2005 Agreement and impose attorney fees and costs (petition to strike).  R.R. at 263a-66a.  Upon Owners' motion, the trial court consolidated the multiple assessment fee claims.  See R.R. at 114a-16a.

In response to Owners' petition, the Association asserted Owners subdivided the three townhouse units into six units by recording six new deeds in 2007.  According to the Association, Owners' filing of the declaration of individual unit air space rights, an essential element of condominium conversion, constituted a *de facto* condominium conversion.  Further, even assuming Owners' six deeds are for townhouse units (as opposed to condominium units), Owners owed six monthly townhouse assessment fees for that period.  The total amount due and owing for six townhouse fees for the period of September 2007 through December 2014 was $33,276.

4

**G. Denial of Petition to Strike Assessment Fee Claims**

Ultimately, the trial court determined Owners created *de facto* condominiums in preparation for selling the individual units. In its opinion, the trial court recognized Section 3103 of the Uniform Condominium Act (Condominium Act), 68 Pa. C.S. §3103, defines "[**c**]**ondominium**" as:

> Real estate, portions of which are designated for separate ownership and the remainder of which is designated for common ownership solely by the owners of those portions. Real estate is not a condominium unless the undivided interests in the common elements are vested in the unit owners.

The trial court further recognized the Uniform Law Comment (Comment) to Section 3102 of the Condominium Act, 68 Pa. C.S. §3102, states that the creation of a condominium under the Condominium Act occurs with the recordation of a declaration. However, Paragraph 2 of the Comment also indicates the Act's definition of "condominium" contemplates that *de facto* condominiums may exist if the nature of the ownership fits the definition. In addition, the Comment states that the Condominium Act would apply to such *de facto* condominiums.

In its January 2015 opinion and order denying Owners' petition to strike the assessment fee claims, the trial court reasoned:

> In the case [at bar], the subject units are real estate in which portions are designated for separate ownership and the remainder is designated as common ownership. Thus, these units fit the definition for condominium. Furthermore, a Declaration of Air Space Rights is typically granted for a condominium. In the facts before us the Declarations conveyed to the occupants an immediate interest in the use of the common area.

5

> This court finds that [Owners] have created *de facto* condominiums in preparation to selling the units. Even though the real estate was not in any Declaration of Condominium and has never been offered for inclusion in a condominium, in actuality, a condominium is what was created when [Owners] recorded six Declarations of Air Space Rights and Easements.
>
> The owner of a townhouse usually owns the land beneath and the roof above, and a condominium owner does not. Each occupant in the instant case does not own the land beneath the unit. The tenants in the case [at bar] own the air but not the land. [Owners'] labelling these units 'stacked townhouses' is an attempt to circumvent the Agreement and avoid the payment of six separate condominium fees.

Tr. Ct., Slip. Op., 1/14/15, at 3; R.R. at 116a. Therefore, the trial court entered an order denying Owners' petition to strike. R.R. at 117a.

### H. Motion for Reconsideration

Nearly a month later, on February 13, 2015, Owners electronically filed a motion for reconsideration alleging the trial court misinterpreted Owners' Declaration of Air Space Rights and Easements, which "identifies no common area, makes no reference to common area, creates no joint or common ownership, and does not convey or purport to convey an immediate interest in the use of anything identified as a common area. Indeed, neither the word 'common' nor its synonym appears anywhere in the said docket." R.R. at 121a. However, the prothonotary did not accept the electronic filing until February 17, 2015, after a holiday.

6

In short, Owners asserted, the trial court misinterpreted the plain language in the Declaration, and thus mistakenly applied the language in Paragraph 2 of the Comment to 68 Pa. C.S. §3102, to conclude that the subject real estate fits the definition of a *de facto* condominium. Therefore, Owners argued, applying the trial court's reasoning to the correct facts leads to the conclusion that the subject properties are not condominiums, *de facto* or otherwise. As such, the trial court erred in determining Owners converted the subject properties to condominiums.

The trial court, however, did not receive Owners' motion for reconsideration until February 17, 2015, which the court concluded fell beyond the date for reconsideration of its January 14 order. Tr. Ct., Slip. Op., 11/24/15, at 4. Consequently, the trial court denied the motion as untimely. Id. Nonetheless, the trial court also noted Owners' motion raised issues the court already considered and rejected. Id. at 4-5. The court also emphasized that Owners did not appeal the trial court's order denying their motions to strike the assessment fee claims. Id. at 5.

## I. Owners' Declaratory Judgment Action (Third Action)

In March 2015, Owners filed an action for declaratory judgment seeking a judgment that Association's assessment fee claims for the subject real estate lacked a valid legal basis. See R.R. at 4a-11a. Owners' declaratory action was assigned to the same trial judge.

Owners' declaratory judgment complaint advanced many of the same arguments raised in their motion for reconsideration of their petition to strike. In

short, Owners argued the subject real estate, which they described as six "stacked townhouses," did not meet the definition of a "condominium" in 68 Pa. C.S. §3103.

### J. Association's Preliminary Objections

In response, the Association filed preliminary objections to Owners' declaratory complaint in the nature of a motion to dismiss Owners' complaint based on a prior pending action, collateral estoppel and *res judicata*. See R.R. at 41a-49a.

The Association asserted that preliminary objections may be filed based upon the pendency of a prior action. Pa. R.C.P. No. 1028(a)(6). Under Pennsylvania law, the issue of a pending prior action is purely a question of law determinable from a review of the pleadings. Davis Cookie Co. v. Wasley, 566 A.2d 870 (Pa. Super. 1989).

Similarly, the Association averred the doctrine of collateral estoppel applies here because the parties, the real estate, the liens, and the legal issues are identical to those litigated in Owners' petition to strike. Collateral estoppel forecloses re-litigation of an issue of fact or law that was actually litigated and was necessary to the original judgment. J.S. v. Bethlehem Sch. Dist., 794 A.2d 936 (Pa. Cmwlth. 2002), appeal denied, 818 A.2d 506 (Pa. 2003).

The Association averred Owners' complaint is nothing more than an attempt to appeal or revisit the issues already decided by the trial court in denying

Owners' petition to strike. Prelim. Obj. at ¶25; R.R. at 45a. To that end, the Association averred the specific issue concerning the validity of the assessment fee liens was decided in a prior action and thus Owners are barred from re-litigating the validity of the liens under the guise of a declaratory judgment action. Prelim. Obj. at ¶27; R.R. at 45a-46a.

### K. Owners' Responsive Preliminary Objections

In response, Owners filed preliminary objections to the Association's preliminary objections. See R.R. at 146a-48a. Owners asserted that under Pennsylvania law, the filing of an assessment fee claim under the Uniform Planned Community Act of 1996 (UPCA), 68 Pa. C.S. §§5101-5414, is merely notice of a claim or charge on the property and a statutory lien which is neither a final judgment nor a lien capable of execution in the absence of a separate action in the nature of a mortgage foreclosure to enforce the lien and obtain judgment. In particular, Section 5315(a) of the UPCA, 68 Pa. C.S. §5315(a), relating to liens for assessments, provides in part:

> **(a) General Rule.**—The association has a lien for any assessment levied against the unit or fines imposed against its unit's owner from the time the assessment or fine becomes due. The association's lien may be foreclosed in a like manner as a mortgage on real estate.

As indicated by the first sentence in 68 Pa. C.S. §5315(a), the Association obtained a lien on Owners' units the day the assessments became due. Forest Highlands Cmty. Ass'n v. Hammer, 903 A.2d 1236 (Pa. Super. 2006). However, the first step in enforcing an assessment lien is the filing of a foreclosure complaint, action in debt or contract. 68 Pa. C.S. §5315(f); London Towne Homeowners Ass'n v.

9

Karr, 866 A.2d 447 (Pa. Cmwlth. 2004).  Unless proceedings to enforce the lien are instituted within three years of when the assessments were payable, the lien is extinguished.  68 Pa. C.S. §5315(e).

Owners further averred that under Pennsylvania law, the trial court's denial of their petition to strike was neither a final order nor an appealable interlocutory order.  Because the Association had not commenced an action to enforce the statutory lien, no pending prior action existed.  Similarly, because the trial court did not yet decide the merits of the Association's assessment claims, Owners argued an appealable judgment did not exist.

## L. Owners' Recusal Petition

In addition to their preliminary objections, Owners filed a petition for recusal alleging that the trial judge evidenced his bias against them, and his inability to be impartial was evident from his unsupported and blatantly erroneous statements in his opinion and order dismissing Owners' petition to strike.  Owners alleged the trial court's opinion and order were directly contrary to the objective documentary evidence.  Even though Owners raised these mistaken factual references in their motion for reconsideration, the trial court summarily denied it.

Owners then repeated their argument that their recorded Declaration of Air Space Rights and Easements did not create *de facto* condominiums.  To the contrary, the literal language of the Declaration indicates that the units do not meet the definition of a "condominium" in 68 Pa. C.S. §3103.  In short, a Declaration neither created nor identified any common areas and does not convey an

10

immediate interest in the use of anything identified as a common area. Second, similar to townhouses and unlike condominiums, a Declaration indicates the lower unit owners own the land underneath. Third, unlike a condominium, the upper unit owners own a part of the roof.

Therefore, Owners argued, the trial court's determination that Owners attempted to avoid paying the six separate condominium fees by labelling these units as "stacked townhouses" imputes a dishonest or dishonorable purpose to their perfectly legal intentions and actions. Owners continued, the trial court's reasoning assaults Owners' integrity. Owner John Cellucci is respected as a member of the Pennsylvania Court of Judicial Discipline.

At a June 1, 2015 hearing, the trial court discussed Owners' recusal petition. See R.R. at 192a-96a. The trial court also entered an order denying the recusal petition. R.R. at 169a.

### M. Association's Objections Sustained; Complaint Dismissed

On June 2, 2015, the trial court issued an order overruling Owners' objections to the Association's preliminary objections. R.R. at 167a.

On August 18, 2015, the trial court issued an order sustaining the Association's preliminary objections and dismissing Owners' declaratory judgment action with prejudice. R.R. at 197a.

11

In November 2015, the trial court issued an opinion in support of its orders. <u>See</u> R.R. at 210a-26a.

**N. Trial Court's Opinion (11/24/15)**
**1. Reasons for Denial of Recusal Petition**

Turning to Owners' declaratory judgment action (third action), the trial court first explained at length why it denied Owners' recusal petition. <u>See</u> R.R. at 217a-23a. In refuting Owners' allegations of bias and partiality, the trial judge indicated he did not know Owners prior to their first court appearance before him. Therefore, the court reasoned, it would have been difficult to be biased or partial against Owners prior to the hearing. R.R. at 217a-18a.

Further, the trial court noted, Owner John Cellucci inappropriately introduced himself, outside the presence of the Association's counsel, as a judge on the Pennsylvania Court of Judicial Discipline. R.R. at 217a. The trial judge thus reasoned it could be inferred that Owner Cellucci, by revealing his position *ex parte* while walking from the courtroom to chambers after the parties' first court appearance, tried to influence the court or intimidate it into rendering a favorable decision. R.R. at 218a.

In addressing the merits of the recusal petition, the trial court stated:

> <u>In the case *sub judice*, [Owners] did not present any evidence, yet alone substantial evidence, that this court was biased against them</u>. [Owners'] first complaint in their petition to disqualify is that the court did not conduct an evidentiary hearing but accepted two stipulations of counsel for documentary evidence to be admitted, the Declaration of Condominium and the

12

Declaration of Air Space Rights and Easements. At the hearing, the parties stipulated that the facts were undisputed and that all issues were purely legal. This court asked both parties if they wanted to present evidence through testimony, and both parties, including [Owners], did not. Thus, the evidence complete, this court heard argument concerning the parties' interpretation of the evidence and its legal significance. It did not prohibit a hearing, but instead, welcomed any other evidence from either party. In addition to not appealing this court's Order, [Owners] never filed a motion, at any time, to re-open the case to present any additional evidence.

R.R. at 219a-20a (emphasis added).

The trial court also rejected Owners' argument that its summary denial of their motion for reconsideration of their petition to strike the assessment fees as untimely demonstrated a bias against them. Simply, Owners had 30 days to seek reconsideration of the trial court's order denying their petition to strike. Although Owners electronically filed the motion on February 13, 2015, the prothonotary did not accept it as received until February 17, 2015. Therefore, the trial court dismissed it as untimely. R.R. at 224a. Significantly, the trial court further observed, even assuming it did have jurisdiction over the motion, the arguments raised in the motion were previously presented and rejected. R.R. at 223a.

Further, the trial court reasoned, its disposition of the merits did not reflect any bias. The court simply weighed the credibility of the evidence and arguments and decided in favor of the Association's position. Although Owners disagreed with the trial court's determination, this does not establish bias on the

13

part of the court. Even if the trial court reached erroneous determinations or made an incorrect ruling, this also would not establish bias. Rather, Owners' remedy would be to appeal. R.R. at 217a.

## 2. Reasons for Sustaining the Association's Preliminary Objections

In its opinion, the trial court also addressed Owners' contention that it erred in sustaining the Association's preliminary objections to their declaratory action based on the existence of a prior pending action and under the doctrine of collateral estoppel. Owners argued the doctrines of prior pending action and collateral estoppel were inapplicable because the Association did not commence any action as required by the UPCA to enforce its statutory lien claim and obtain a judgment that would support an order of execution.

In rejecting Owners' position, the trial court explained that in dismissing Owners' petition to strike, it considered all the stipulated evidence, everything raised in the briefs, and the arguments of counsel. Owners' petition to strike the Association's assessment fee claims involved the same parties, the same real estate and the same assessment liens at issue in Owners' declaratory judgment action. In denying the petition to strike, the court accepted the Association's argument that Owners, in taking the *undisclosed* action of filing of six new deeds several years after entering into the 2005 Agreement, converted the units to *de facto* condominiums to avoid their obligation to pay the additional monthly assessment fees prior to selling the properties. Therefore, the trial court determined Owners were precluded from re-litigating the same issues in the form of a declaratory judgment action. R.R. at 224a.

14

The trial court also reasoned the previous action remained pending because the Association may choose to foreclose on the outstanding liens or bring another type of enforcement action to collect the assessments. "The liens involve the same properties, the same parties, and the same subject matter as that in the instant case. Therefore, [Owners] cannot maintain another action with regard to the identical properties, parties, and issues that were involved in the second action." R.R. at 226a.

## O. Appellate Review

In reviewing a recusal motion, a judge's decision to deny the motion cannot be disturbed absent an abuse of discretion. In re Lokuta, 11 A.3d 427 (Pa. 2011). Further, in reviewing an order sustaining preliminary objections based on a prior pending action, our scope of review is plenary. Hillgartner v. Port Auth. of Allegheny Cnty., 936 A.2d 131 (Pa. Cmwlth. 2007).

## II. Issues
### A. Petition for Recusal
### 1. Argument

Owners contend the trial court abused its discretion by denying their recusal petition where the trial judge failed to make a conscientious determination of his ability to assess the case in an impartial manner, and where the trial judge failed to adequately consider whether his involvement in the case created an appearance of impropriety and would tend to undermine the public confidence in the judiciary.

15

Owners assert the trial judge exceeded the bounds of propriety when he offered a subjective and pejorative conclusion regarding the nature of Owners' intent underlying their actions in his decision denying Owners' petition to strike the Association's assessment fee claims. To that end, Owners maintain the trial court's conclusion that they intentionally sought to avoid payment of the assessment fees, by mislabeling their units as *stacked townhouses*, was unsupported by the evidence. Because the record of the trial court's December 2014 hearing on the petition to strike included no evidence supporting the trial court's gratuitous and subjective conclusions regarding Owners' intentions in this case, Owners argue there is no other reasonable explanation for the trial court's decision other than the absence of impartiality on the part of the trial judge.

Thereafter, Owners filed a respectful motion for reconsideration setting forth, in good faith, errors of law made by the court with respect to objective written evidence. However, the trial court summarily denied the motion, without comment, the same day it received it.

Further, Owners argue that the transcript of the trial court's June 2015 hearing on their recusal petition, R.R. at 191a-96a, reflects not an objective hearing, but rather a carefully controlled inquisition by the trial judge that repeatedly blurred the line between the issue of the trial court's impartiality and the substantive issues of the case.

Owners cite Canon 2 of the Code of Judicial Conduct, which states: "A JUDGE SHALL PERFORM THE DUTIES OF JUDICIAL OFFICE

16

IMPARTIALLY, COMPETENTLY, AND DILLIGENTLY." 207 Pa. Code Canon 2. Further, Rule 2.2 under Canon 2 (relating to impartiality and fairness) provides: "A judge should uphold and apply the law, and shall perform all duties of judicial office fairly and impartially."[1] 207 Pa. Code Rule 2.2. Further, the Comment to Rule 2.2 provides in part:

> [1] To ensure impartiality and fairness to all parties, a judge must be objective and open-minded.
>
> [2] Although each judge comes to the bench with a unique background and personal philosophy, a judge must interpret and apply the law without regard to whether the judge approves or disapproves the law in question. This comment is not intended to restrict the appropriate functions of the court in statutory or common law review.
>
> [3] When applying and interpreting the law, a judge sometimes may make good-faith errors of fact or law. Errors of this kind do not violate this Rule.

207 Pa. Code Rule 2.2, Comment, §§1-3.

Owners also cite Commonwealth v. White, 910 A.2d 648 (Pa. 2006), which addressed the standard for recusal. In White, the Supreme Court, quoting its earlier decision in Commonwealth v. Abu-Jamal, 720 A.2d 79, 89 (Pa. 1988), stated (with emphasis added):

---

[1] In Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority, 489 A.2d 1291, 1298 (Pa. 1985), the Supreme Court observed that the Code of Judicial Conduct "does not have the force of substantive law, but imposes standards of conduct upon the judiciary to be referred to by a *judge* in his *self-assessment* of whether he should volunteer to recuse from a matter pending before him." Further, the rules "do not give standing to others, including [the appellate courts], to seek compliance or enforcement of the Code because its provisions merely set a norm for all our judges and do not impose substantive legal duties on them." Id.

17

It is the burden of the party requesting recusal to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to jurist's ability to preside impartially. As a general rule, a motion for recusal is initially directed to and decided by the jurist whose impartiality is being challenged. In considering a recusal request, the jurist must first make a conscientious determination of his or her ability to assess the case in an impartial manner …. The jurist must then consider whether his or her continued involvement in the case creates an appearance of impropriety [or] would tend to undermine public confidence in the judiciary. This is a personal and unreviewable decision that only the jurist can make. Where a jurist rules that he or she can hear and dispose of a case fairly and without prejudice, that decision will not be overturned on appeal but for an abuse of discretion.

White, 910 A.2d at 657 (citation omitted).

The White Court also reiterated that "[a]ny tribunal permitted to try cases and controversies must not only be unbiased but must avoid even the appearance of bias. There is no need to find actual prejudice, but rather the appearance of prejudice is sufficient to warrant the grant of new proceedings." Id. (citation omitted). Nonetheless, there is a presumption that judges of the Commonwealth are honorable, fair and competent, and that when confronted with a recusal demand, are able to determine whether they can rule in an impartial manner, free of personal bias or interest in the outcome. Lokuta.

Here, Owners assert their recusal petition was timely, specific, factual and sincere; they did not file it in reaction to the trial court's decision denying their petition to strike. Owners further assert that during the June 2015 hearing on their recusal petition the trial judge merely engaged in a recitation of the averments in

18

the petition and a discussion of the historical facts in the dispute between the parties. In doing this, the trial court denied Owners any opportunity to produce evidence supporting their allegations.

When the trial judge did discuss the averments of the recusal petition, Owners argue it was not from the perspective of making a thoughtful determination about his ability to be impartial, but instead the judge assumed an advocate's posture in defense of his underlying decision denying Owners' petition to strike. Finally, after asking Owners if they would like to withdraw the recusal petition and receiving a negative reply, the trial judge pronounced himself impartial and free from bias. In short, Owners argue, the proceedings on the recusal petition were devoid of any thoughtful determinations by the trial court as to its ability to proceed in an impartial manner.

Owners further assert that during the August 2015 hearing on the Association's preliminary objections, two months *after* denying the recusal motion, the trial judge again insisted on discussing the recusal petition. Owners claim the record of that hearing reflects the trial court's obsession with the fact the recusal issue was raised. For example, the following discussion occurred:

> THE COURT: I don't understand – but you make these accusations as if this Court acted with bias and prejudice, that you really challenged this Court's integrity.
> [OWNERS' COUNSEL]: You're talking about the Motion for Recusal? The one you ruled on?
> THE COURT: Yes. Yes.
> [OWNERS' COUNSEL]: Well, that's a done deal at this point, Your Honor.
> THE COURT: Well, did you or did you not question the Court's integrity in that petition?

[OWNERS' COUNSEL]: No. I did not. I questioned the Court's accuracy in its review and citations to the document.

THE COURT: Well, as far as accuracy, that's one thing, but you don't file motions for reconsideration and then a recusal in every case and then file an appeal. You did that in this case. <u>You raised some really disturbing issues, which I told you about before and I'm still trying to – it says here, [t]he above facts reasonably call into consideration the impartiality of the Court and dictate that this Court disqualify itself from further action herein. And that's very disturbing. I mean, I know he's threatening to turn me – that was in here also – turn me into the Judicial Inquiry Review Board and did you do that</u>?

[OWNERS' COUNSEL]: There's no such threat there at all. I'm not sure what you're reading from.

THE COURT: I thought that was also in there.

[OWNERS' COUNSEL]: No.

R.R. at 201a (emphasis added). Owners assert this type of dialogue continues for several more pages and confirms that the trial judge was neither impartial nor able to avoid the appearance of personal bias. <u>See</u> 201a-02a. Consequently, Owners argue the record clearly shows the trial judge abused his discretion in denying their recusal petition.

## 2. Analysis

We recognize that a judge's decision to deny a recusal motion cannot be disturbed absent an abuse of discretion. <u>Lokuta</u>; <u>White</u>. Obviously, the party seeking a judge's recusal bears the burden of producing evidence of bias, unfairness or prejudice. <u>White</u>. The evidence must raise a substantial doubt as to the jurist's ability to preside impartially. <u>Id.</u> There is a presumption that the judge has the ability to determine whether he is able to rule impartially and without

20

prejudice. Lokuta; In re: Bridgeport Fire Litigation, 5 A.3d 1250 (Pa. Super. 2010). If the trial judge has any doubt as to his ability to be impartial, or whenever he believes his impartiality could be reasonably questioned, he should recuse himself. Commonwealth v. Goodman, 311 A.2d 652 (Pa. 1973).

A review of the record here does not indicate the trial judge acted with bias, prejudice or unfairness in any of the proceedings. At the December 2014 hearing on Owners' petition to strike, the trial judge met with the parties off the record prior to the hearing and they reached an agreement as to most of the material facts. See R.R. at 374a. Therefore, the parties agreed to submit certain documents and stipulations into the record. Further, the judge asked the parties during the hearing whether they wished to present any testimony in addition to the stipulations. R.R. at 379a. Owners' counsel stated he did not think there was any testimony needed. Id. As such, the record shows that Owners were provided a full and fair opportunity during the hearing on their petition to strike to present any documentary evidence or witness testimony they desired. The transcript also reflects no disparaging remarks or comments by the trial judge.

In January 2015, six weeks after the hearing, the trial court issued an opinion and order denying Owners' petition to strike. R.R. at 361a-64a. As discussed above, the trial court determined Owners created six *de facto* condominiums in order to sell them. R.R. at 363a. The court further opined Owners labeled these units as "stacked townhouses" to circumvent the 2005 Agreement and avoid payment of six separate condominium fees. Id.

21

Apparently, this language offended Owners, who claimed it impugned their integrity and evidenced bias on the part of the trial judge. We disagree.

In Commonwealth v. Kearney, 92 A.3d 51 (Pa. Super. 2014), the Superior Court recently cited the U.S. Supreme Court's decision in Liteky v. Unites States, 510 U.S. 540 (1994), which recognized that opinions formed by a judge on the basis of the facts introduced during the course of the proceedings do not constitute a basis for recusal unless they display a deep-seated favoritism or antagonism that would render fair judgment impossible. "Thus, judicial remarks made during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties or their cases, ordinarily do not support a bias or partiality challenge." Liteky, 510 U.S. at 555.

Here, the trial court's statement, that Owners labeled the six units as "stacked townhouses" to circumvent the 2005 Agreement and avoid payment of six separate condominium fees, is a reasonable inference from the evidence. The trial court's findings of fact are entitled to deference if they are supported by the evidence of record. Wyeth Pharm., Inc. v. Borough of W. Chester, 126 A.3d 1055 (Pa. Cmwlth. 2015).

Further, Owners' allegation that the trial judge denied their motion for reconsideration without reading it is contrary to the record. Rather, the trial court denied the motion as untimely. See R.R. at 223a. Nevertheless, it appears the trial court erred in denying the motion as untimely where the prothonotary accepted it on a Tuesday following a Monday holiday (Presidents' Day 2015) when the appeal

22

period expired the preceding Saturday. See 1 Pa. C.S. §1908 (when the last day of an appeal period falls on a Saturday, Sunday or legal holiday, such days shall be omitted from the computation of the appeal period). However, a good-faith error does not indicate bias on the part of the court. Abu-Jamal; Arnold v. Arnold, 847 A.2d 674 (Pa. Super. 2004). What is more, the trial judge stated he would have denied the motion anyway because the issues raised were previously addressed and rejected. R.R. at 223a. In sum, an adverse ruling by a trial judge does not, by itself, indicate partiality. Arnold. Therefore, the trial court's adverse rulings on Owners' petition to strike and motion for reconsideration do not indicate bias or impartiality. Id.

Regardless, comment must be made here about Owner John Cellucci's unsolicited, unexplained and inappropriate reference to himself as a Judge of the Pennsylvania Court of Judicial Discipline during the pendency of the litigation. See R.R. at 193a. The reference was *repeated* in Owners' recusal petition. R.R. at 36a. In the Association's response to the recusal petition, it stated this reference "is nothing more than a thinly veiled threat directed to a sitting Common Pleas trial judge and is by its very nature of questionable ethical grounds." R.R. at 131a-32a. In its brief in opposition to the recusal petition, the Association quoted a Superior Court opinion which commended a trial judge for denying a recusal motion viewed as a "blatant attempt at forum shopping" in a hotly contested custody battle. See R.R. at 137a-38a (citing M.O. v. F.W., 42 A.3d 1068, 1071-72 (Pa. Super. 2012)). The Association's arguments invite thorough consideration.

In sum, while the trial court may have felt insulted by the recusal motion, we cannot discern an abuse of discretion in the trial court's statement at the conclusion of the June 1, 2015 hearing: "I do not have any doubt in my ability to preside impartially[,] and I don't see how my impartiality can be reasonably questioned with the answers that I have received to the questions that I have asked." R.R. at 196a. Therefore, we must reject Owners' contentions to the contrary. Lokuta; White.

## B. Preliminary Objections

### 1. Argument

### a. Prior Pending Action

Owners further contend the trial court erred in sustaining the Association's preliminary objections based on the alleged existence of a prior pending action, and the doctrines of collateral estoppel and *res judicata*, where the Association commenced no past or pending action to enforce its statutory lien claim or obtain a judgment that would support an order of attachment or execution.

Owners contend the trial court erred in determining that the order denying their petition to strike the Association's assessment fee claims, which were filed under the UPCA, constituted a final action that could give rise to a claim of a prior pending action or collateral estoppel.

Owners further assert the Association's preliminary objections are based upon nonexistent facts, flawed analysis, and a fundamental misunderstanding of the UPCA, including a conscious disregard of its language.

A prior pending action defense, otherwise known as the doctrine of *lis pendens*, is a valid defense only when the parties, the causes of action and the relief are the same in both actions. Procacina v. Susen, 447 A.2d 1023 (Pa. Super. 1982). The burden is on the moving party to show that in each case, the same parties are involved, the same rights asserted and the same relief sought. Id. A mere assertion that prior acts are pending is insufficient. Id. The applicability of the defense is a question of law determinable from an inspection of the records in the two actions. Id.

Here, Owners assert, the Association assumed that because the trial court denied Owners' petition to strike, without a hearing or factual record, such action constituted a prior pending claim. Owners argue there is no basis for this assumption, and it clearly fails the test in Procacina and Davis Cookie.

First, the Association filed no action to enforce its statutory lien against Owners. Second, the trial court's order denying Owners' petition to strike is merely an order refusing to strike a lien, which is not a judgment that altered, enhanced or terminated the rights of either party. In general, a court's refusal to grant a motion to strike a lien is not considered an appealable order. See Penn Twp. v. Hanover Foods Corp., 847 A.2d 219 (Pa. Cmwlth. 2004); Borough of Ambler v. Regenbogen, 713 A.2d 145 (Pa. Cmwlth. 1998);

Here, Owners argue, their petition to strike was a challenge to the Association's filing of its statutory liens based on the Association's violation of the 2005 Agreement. Owners further assert there was no other legal action pending at

25

the time the trial court dismissed their petition to strike. In order to qualify as a *pending action*, a real controversy must be filed and pending in the same or some other court. No such action existed at the time Owners filed their declaratory judgment complaint in March 2015. Thus, the trial court erred in sustaining this preliminary objection.

### b. Collateral Estoppel/Res Judicata

In their second preliminary objection, the Association asserted claims of collateral estoppel and *res judicata*. Owners argue these doctrines are inapplicable to this case because they are dependent upon the characterization of the trial court's order denying the petition to strike as a final order. This characterization is directly contrary to the literal language of the UPCA, which empowered the Association to file the liens.

In particular, Section 5315(a) of the UPCA, 68 Pa. C.S. §5315(a), authorizes the filing of a lien, not a final order or judgment. As indicated by the language in Section 5315(a), the lien may be foreclosed in a like manner as a mortgage on real estate. If foreclosure is not the best remedy, the Association may bring other actions or suits to recover on the liens. 68 Pa. C.S. §5315(f).

Owners further assert that in considering the merits of a petition to strike, a court is limited to a review of the record as filed by the party in whose favor the warrant issued. Forest Highlands Cmty. Ass'n. Therefore, such an order is an interlocutory order. As such, Owners contend the trial court's order denying their petition to strike the Association's liens was not a final appealable order.

26

Owners also argue our decision in <u>London Towne Homeowners Ass'n</u> is particularly informative, if not controlling here. In <u>London Towne</u>, the homeowners' association levied an assessment and fines against a homeowner after finding him "guilty" of making changes to his front door and pediment, and erecting fences in the front and rear yards, without the association's approval. However, Karr, the homeowner, never appeared at the association judicial committee's meeting or "hearing." Further, the judicial committee did not take evidence regarding Karr's alleged violations.

Thereafter, Karr filed a declaratory judgment action challenging the validity of the assessments and fines. Karr argued that a unit's front door and pediment were beyond the association's governance, and he actually improved the look of the unit. Karr also asserted the front fence was a rose arbor, not a fence, and he did not install a new rear fence; he merely leaned an indoor wrought iron railing against the existing fence.

In response to Karr's declaratory judgment action, the association filed a second homeowner's lien in the amount of $34,900 for the unpaid fines and counsel fees. This time, the association filed it with the common pleas prothonotary, not the recorder of deeds. Karr then filed a petition to strike the liens and stay the proceedings. Following oral argument, the trial court granted Karr a stay but denied his petition to strike. In granting the stay, the trial recognized that the substantive validity of the association's assessments remained at issue. In particular, the "trial court explained that if 'the court grants the relief requested by

Karr in the declaratory judgment action, the [association's lien] will accordingly be stricken.'" London Towne, 866 A.2d at 450 (citation omitted).

Karr appealed to this Court and challenged the validity of the liens. In addressing this issue, we reasoned (with emphasis added):

> The substantive validity of the [a]ssociation's assessments and fines against Karr will be adjudicated, in due course, in the pending declaratory judgment action. Karr explains that if the trial court had simply stayed the lien proceedings without denying his petition to strike, he would not have appealed to this Court. However, by denying his petition to strike, the trial court made conclusions of law that Karr fears may render the declaratory judgment action an exercise in futility. This fear is not well grounded. <u>By holding open the possibility of striking the lien if the declaratory judgment action is decided in Karr's favor, the trial court has expressed a commitment to decide the merits of the declaratory judgment action without reference to its decision on the petition to strike. This is appropriate inasmuch as a factual record has never been made on the substantive question of whether Karr has ever, in fact, violated the covenants.</u>

Id.

In London Towne, we determined the association perfected its first lien under Section 5315(d) of the UPCA, 68 Pa. C.S. §5315(d), by recording a declaration with the county recorder of deeds. Therefore, we reasoned that a second lien was unnecessary. Nonetheless, the association filed a second lien with the common pleas prothonotary, claiming that was the custom in Allegheny

28

County. However, we ultimately determined in <u>London Towne</u> that the UPCA did not authorize the second lien.

With respect to the valid first lien, we recognized the association failed to take the first step in an enforcement proceeding. The first step must be either a foreclosure action under 68 Pa. C.S. §5315(a) or some other appropriate action under 68 Pa. C.S. §5315(f), such as a debt collection or contract action.

However, neither the association, at its judiciary committee meeting, or the trial court made any factual findings or verifications "as to whether the structure in Karr's front yard is a rose trellis or more akin to the Great Wall of China." <u>London Towne</u>, 866 A.2d at 453-54. In <u>London Towne</u>, the community's declaration required that the association's judicial committee hear testimony as to the homeowner's alleged violations of a covenant. To that end, we noted the failure of a non-burdened party to appear does not divest the moving party of its evidentiary burden. "These determinations are required before the proper amount of the [a]ssociation's assessment lien, if any, can be established let alone a foreclosure instituted." <u>Id.</u> at 454.

Applying <u>London Towne</u> here, Owners assert the Association's perfection of its lien is merely the notice of a claim which is neither a final judgment nor a judgment capable of execution. Further, the Association's lien will expire in three years. 68 Pa. C.S. §5315(e). Therefore, Owners argue, no final order or judgment in this case yet exists. At the least, the filing of lien and an order denying a motion to strike the lien does not amount to a final judgment.

In addition, Owners cite <u>Forest Highlands Community Ass'n</u> for the proposition that the automatic creation of a lien for unpaid assessment fees does not dispense with the need for the association to file the proper type of enforcement action required by Section 5315 of the UPCA, 68 Pa. C.S. §5315. In <u>Forest Highlands</u>, the Superior Court reasoned (with emphasis added):

> [In the case at bar], expanding upon the rationale in <u>Karr</u>, we hold that [the association] seeking a judicial sale as the vehicle to secure payment of its assessment lien did not equate with the approved enforcement mechanism to collect an assessment lien by an association's action in mortgage foreclosure, action in debt or contract. <u>To enforce its assessment lien against [homeowner] in accordance with UPCA, the [association] should have filed a complaint, not a writ of execution for a judicial sale. Following such procedure would have availed [homeowner] the opportunity to question the proper amount, if any of the [a]ssociation's assessment lien.</u> Neither procedure was followed here, yet such protocol is firmly rooted in Pa. R.C.P. [Nos.] 1147(1)-(6) [relating to requirements for mortgage foreclosure complaint].

<u>Forest Highlands</u>, 903 A.2d at 1240-41 (footnote omitted).

Because the Association failed to initiate a proper enforcement action authorized under the UPCA at the time of Owners' preliminary objections, Owners argue the doctrines of prior pending action, *res judicata* and collateral estoppel are inapplicable here. No pending enforcement action existed. Therefore, Owners assert no prior action remained pending and no determination on the merits of Owners' liability for the assessments fee claims occurred.

## 2. Analysis

As discussed above, to sustain preliminary objections based on a prior pending action, the objecting party must establish that in each case the parties are the same, the rights asserted are the same, and the relief sought is the same. Virginia Mansions Condo. Ass'n v. Lampl, 552 A.2d 275 (Pa. Super. 1988). Further, technical *res judicata* requires the coalescence of four factors: (1) identity of the thing sued upon or for; (2) identity of the causes of action; (3) identity of the persons or parties to the action; and (4) identity of the quality or capacity of the parties suing or being sued. J.S. *Res judicata* applies to claims actually litigated and to those matters that should have been litigated. Id. Generally, causes of action are identical when the subject matter and the ultimate issues are the same in both the old and new proceedings. Id.

Technical *res judicata* encompasses two related but distinct principles: technical *res judicata* and collateral estoppel. Id. Technical *res judicata* provides that where a final judgment exists, a future lawsuit on the same cause of action is precluded. Id. Collateral estoppel acts to foreclose litigation in a subsequent action where issues of law or fact were actually litigated and necessary to a previous final judgment. Id.

Further, the doctrine of collateral estoppel forecloses re-litigation of an issue of fact or law that was actually litigated and was necessary to the original judgment. J.S. As discussed above, collateral estoppel applies if: (1) the issue decided in the prior case is identical to the one presented in the later case; (2) there was a final judgment on the merits in the prior action; (3) the party against whom

31

collateral estoppel was asserted is a party to the prior action or is in privity with party to the prior action; and, (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. Id.

Here, the trial court, in its opinion in support of its order sustaining the Association's preliminary objections, explained its determinations as follows:

> This action for declaratory judgment concerns the same parties, the same real estate, the same liens for homeowners' assessment fees and the same issues which were determined in the second action. The second action [2014 assessment fee claims] constitutes a prior pending action concerning the same parties, same issues and the same relief, the elimination of the liens, based on the evidence presented and the arguments raised. For these reasons, [Owners] are barred from re-litigating the same matters in the form a declaratory action.
>
> The second action [2014 assessment fee claims] was completely resolved by this court as noted in its final Order and Opinion issued which explains in detail this court's reasoning for its ruling. As stated, this Court based its decision on everything raised in the briefs, the argument of counsel, and the stipulated evidence. Obviously, this court accepted the arguments made by [the Association] that what [Owners] were doing was, yet again, avoiding their obligation to pay the equivalent fees based on the deeds of ownership. [Owners], by their undisclosed actions taken two to three years after the settlement in 2007 of lengthy litigation, converted the units to *de facto* condominiums as the [Association] maintained, thus violating the [2005 Agreement] by their actions. Thus, this court's findings must stand. Any subsequent actions filed asking for the same type of relief that was denied in the second action, cannot be heard now when they preserved no issue for appeal in the last

32

> action. This would allow the proverbial second bite by the same party of the same apple.
>
> Furthermore, the liens in the consolidated second action are still pending because [the Association] may choose to foreclose at any time on those liens. The liens involve the same properties, the same parties, and the same subject matter as that in the instant case. Therefore, [Owners] cannot maintain another action with regard to the identical properties, parties, and issues that were involved in the second cause of action.

Tr. Ct., Slip Op., 11/24/15, at 16-17; R.R. at 225a-26a (emphasis added).

Initially, we note the trial court's acknowledgment that in the second action (the 2014 assessment fee claims) the Association had not yet brought a proper enforcement action as required by Section 5315 of the UPCA, 68 Pa. C.S. §5315. Absent a pending enforcement action filed by the Association, we must conclude the trial court erred in determining a prior pending action existed. London Towne. In other words, the possibility the Association may file an enforcement action prior to the statutory expiration of the lien is insufficient to establish the existence of a prior pending action. Id.

In addition, the doctrines of res judicata or collateral estoppel are not applicable here. As discussed in Forest Highlands and London Towne, Owners are entitled to an opportunity in a proper action prescribed by the UPCA to litigate the merits of the Association's assessment fee claims against them. As discussed above, the trial court's order denying Owners' petition to strike did not constitute a final judgment precluding Owners from seeking a declaratory judgment as to whether the Association's liens are entirely valid and enforceable. London Towne.

33

Absent a proper enforcement action under the UPCA, there cannot be a final judgment on the merits or validity of the Association's assessment fee claims. <u>Forest Highlands</u>; <u>London Towne</u>. Here, the trial court's January 2015 opinion and order did not confirm the validity of the assessments or finalize them for purposes of execution. Therefore, the doctrines of res judicata and collateral estoppel are inapplicable here.

## III. Conclusion

For the above reasons, we affirm the trial court's order to the extent it denied Owners' recusal petition, we reverse the order to the extent it sustained the Association's preliminary objections, and we remand the case for the Association's response to the averments in Owners' declaratory judgment action in order for the parties to proceed to a determination of the merits of Owners' claims that the Association's assessment claims are invalid.

_____
ROBERT SIMPSON, Judge

34

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| John R. Cellucci and Edna H. Cellucci, his wife, | : : | |
| Appellants | : | No. 2090 C.D. 2015 |
| | : | |
| v. | : | |
| | : | |
| Laurel Homeowners Association | : | |

## **O R D E R**

**AND NOW**, this 6th day of July, 2016, the order of the Court of Common Pleas Berks County is **AFFIRMED in part and REVERSED in part and this matter is REMANDED** for further proceedings consistent with the foregoing opinion.  Jurisdiction is relinquished.

_____
ROBERT SIMPSON, Judge