IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John R. Cellucci and                  :
Edna H. Cellucci, his wife,           :
                    Appellants        :
                                      :    No.  1094 C.D. 2018
               v.                     :
                                      :    Argued:  April 9, 2019
Laurel Homeowners Association         :


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH[1]                              FILED:  July 18, 2019


　　　　　John R. Cellucci and his wife, Edna H. Cellucci (collectively, Owners), appeal the August 3, 2018 order of the Court of Common Pleas of Berks County (trial court) denying and dismissing their declaratory judgment action seeking a declaration that Laurel Homeowners Association (Association) is prohibited from asserting assessment fee claims against the Owners for six condominium units based upon the language of a settlement agreement (Agreement) that the parties executed in 2005.  The predominate issue on appeal is whether the trial court erred in determining that the Owners breached the terms of the Agreement because they engaged in conduct sufficient to create *de facto* condominiums under the Pennsylvania Uniform

_____

[1] This opinion was reassigned to the author on May 16, 2019.

Condominium Act (Act)[2] and that, therefore, the Association may commence a legal action against the Owners for past due assessments.

Upon review, we conclude that the Owners waived all issues that they seek to raise on appeal because they failed to file post-trial motions. We further conclude that, even if the Owners' issues were not waived, the Owners have not presented a meritorious argument worthy of relief.

## Background

As the trial court noted, "[t]his has been a lengthy litigation, spanning the last fifteen to twenty years, concerning assessment fee claims only." (Trial Court Op. (T.C.O.), 8/3/2018, at 1.) In its August 3, 2018 order and opinion, the trial court summarized the background of this case and three civil actions that are relevant to the present appeal:

> [The Association] filed the first case in 2003 (Docket No. 03-9152) that ended with [the] Agreement in 2005. In the second case (Docket No. 14-5301), this court denied the petitions of [the Owners] to strike assessment fee claims, enforce [the] Agreement and impose counsel fees and costs. The third case, the case at bar, is [the Owners'] [a]ction for [d]eclaratory [j]udgment. [The Association] filed preliminary objections to this action, which this court sustained. [The Owners] filed a [p]etition for [d]isqualification [] of this court, which this court denied. [The Owners] filed [p]reliminary [o]bjections to [the Association's] [p]reliminary [o]bjections which this court overruled. [The Owners] appealed both adverse rulings to the Commonwealth Court, which affirmed this court on the denial of the recusal motion and reversed this court on the ruling on the preliminary objections. [*See Cellucci v. Laurel Homeowners Association*, 142 A.3d 1032 (Pa. Cmwlth.

---

[2] 68 Pa.C.S §§3101-3414.

2

2016) (*Cellucci I*)]. On remand, this court conducted a hearing on the declaratory action on June 8, 2018 . . . .

(T.C.O., 8/3/2018, at 1-2.)

The trial court then detailed the nature of the dispute and discussed the facts and procedural history of the three civil actions as follows:

On February 22, 1979, [the Owners] purchased six separate living units on three lots in Building 26 in the Laurel Springs [D]evelopment [(Development)] in Exeter Township, Berks County, Pennsylvania . . . . The business records of [the] Association show that [the Association], year after year, assessed [the Owners] for six condominium units. [The Owners] paid those assessments for 24 years from the beginning of their ownership until January 2003, when [the Owners] unilaterally stopped paying those assessments and instead began paying three townhouse assessments. Each of the three legal actions [are] explained in more detail [below].

### First Legal Action, [The] Association v. [The Owners], No. 03-9152

[The Owners'] lots ha[ve] two residential units. Both units are contained and recorded on a single deed filed in the Berks County Recorder of Deeds Office. There are thus three separate recorded deeds.

[The] Association defines townhouses as single-family dwelling houses and condominiums as single structures that house multiple residences. Because each separate lot housed two different families, according to the [Association's] definition, each family in each unit was assessed. In fact, [the Owners] paid for a total of six condominiums every year from 1979 to January 2003.

[The] Association commenced the first legal action in December 2003 to continue to collect the six condominiums assessment bills which [the Owners] refused to pay. In [the Owners'] answer to [the Association's] 2003 complaint, they alleged that they never knowingly paid a condominium fee assessment. The first action was resolved when the parties

3

executed [the Agreement] on March 16, 2005. The parties resolved the dispute in [the Owners'] favor. The litigation was agreed to end with [the Owners] paying only three townhouse assessments. Paragraph 1 of Agreement reads as follows: "[The Association] agrees to withdraw with prejudice all claims of any right to collect condominium assessments from the [Owners] for real estate that they own in Building 26 of the Development unless and until such real estate is converted to condominium units in accordance with applicable Pennsylvania law." [The Owners], in the case at bar, now contend that this Agreement prohibits [the] Association from assessing condominium fees and limits it to the continued assessment of a total of three townhouse fees.

**Second Legal Action, [The] Association v. [The Owners], No. 14-5301**

Approximately two years after the execution of [the] Agreement, on July 26, 2007, [the Owners] unilaterally executed Declarations of Air Space Rights and Easements [(DASREs)]. Their intent was to convert three townhouses into six separate "[s]tacked [t]ownhouses" on their three lots, to sell each of the Upper and Lower units individually as single and separate units. On August 29, 2007, [the Owners] recorded deeds (Deeds) in the Berks County Recorder of Deeds Office stating that they were conveying their three units into six separated "stacked townhouses." They never notified [the] Association about either the execution or the recording of the [DASREs] or of the "stacked townhouse" deeds. Subsequently, [the] Association only learned of these legal maneuvers, seven years later, in early 2014.

On April 14, 2014, [the] Association filed against [the Owners] twelve separate notices of fee claims for monthly condominium assessments owed from the alleged breach by [the Owners] from September 1, 1997, through December 31, 2014, plus filing fees and costs. In this action, [the Owners] filed petitions to strike the assessment fee claims, enforce the Agreement, and impose counsel fees. This court found that [the Owners] had created *de facto* condominiums

4

in preparation to selling the units. Therefore, we denied their petition which [the Owners] timely appealed.

**Third Legal Action, [The Owners] vs. [The] Association, No. 15-3382 (case at bar)**

On March 20, 2015, [the Owners] commenced this third action by filing an action for declaratory judgment. As previously stated, [the Owners] appealed the adverse rulings. On July 6, 2016, [in *Cellucci I*], the Commonwealth Court affirmed the denial of [the Owners'] recusal motion but overruled this court's sustaining of the [p]reliminary [o]bjections and remanded the matter for [the Association] to file an [a]nswer to the [d]eclaratory [a]ction. After the close of the pleadings in the case *sub judice*, this court presided over a trial on June 8, 2018.

(T.C.O., 8/3/2018, at 2-5.)

Next, the trial court recounted the evidence adduced at trial following our remand in *Cellucci I*:

Exhibit D-4 contains some of the letters of assessment sent to the Development's property owners, including [the Owners], from 2000-2017. These letters state the differentiated fees for townhouses and condominiums. Although Mr. Cellucci testified that he had never seen the letters, he acknowledged that from 1979 until 2003 he and his wife owned six units and that they voluntarily paid six condominium fees. Mr. Cellucci further testified that he had never notified [the Association] about the separate townhouse deeds because the units were never sold.

[The] Association also introduced Exhibit D-8, [the Owners'] advertisement for the sale of [their] units. [The Owners'] advertisement . . . states that there are six individually owned townhouses and that the HOA (Homeowners Association) fees are "the lowest in the community at only $64.50 per month" per unit. Mr. Cellucci testified that he had never seen this document before. However, he admitted that the information within the advertisement was true and correct. He also admitted on cross-examination that each of the occupants of the six units

5

[would] receive the same community services as those provided by defendant to all other tenants of the [D]evelopment.

(T.C.O., 8/3/2018, at 5-6.)

In discussing the Owners' conduct and breach of the Agreement, the trial court commented:

> [The Owners], unilaterally and without notice to [the] Association, violated the very agreement they negotiated. They chose to create six deeds from three. What is relevant is that by [the Owners'] action taken in executing such deeds, [they] acknowledged that the six units are each separate properties . . . . [The Owners] intentionally converted the three deeds into six.
>
> For the first 24 years, [the Owners] paid six condominium assessments, until they changed on their own, and began paying on three townhouse assessments. This first change accomplished for them a reduction of the payment of assessment fees from six condominium assessment fees to three townhouse assessment fees. This cut [the Owners'] total assessment costs by nearly one half. However, two years later, they suddenly decided that this was not good enough. Having accomplished their intent to pay less on assessments, [the Owners] wanted more. They changed their ownership interest again; this time to increase their property value by transforming three properties to six properties. Why? Because [the Owners] wanted to sell the units and to double their profit. Conveniently, they neglected to notify [the] Association that they are now back to six units. This maneuver shows that [the Owners] wanted to have it both ways: pay three assessments but sell six separate properties.
>
> [The Owners] will twist and turn the law when it benefits them financially to do so . . . . Obviously, [the Owners] intended to continue to pay only three assessment fees by not notifying [the] Association so that, at the same time, they could sell six separate units advertised at the lowest assessment rates in the development. Taken logically, that means when [the Owners] sell the six units to the unsuspecting buyers, each buyer [would] very soon after

6

settlement be billed for a full assessment fee because [the] Association [would] by then have found out about the transfer with the rendering of the new deed in buyer's name. Mr. Cellucci admitted this fact by testifying that it is up to [the] Association to determine the assessment fees for the new owners.

It would be inequitable to reward [the Owners] for their unilateral conduct including their most recent legal maneuver, their 2015 clandestine revocation of the [DASREs] and Deed recordings, once again without notice to [the] Association. What is worse, they revoked the [DASREs] during the pendency of the appeal before the Commonwealth Court. [The Owners] recorded Revocations of the [DASREs] [for] the six units on October 30, 2015. This action was taken without notice to [the] Association or to this court or to the Commonwealth Court. It is obvious [the Owners] did this to prepare the ground work for their expert to testify in support of their case to win the declaratory judgment before this court.

(T.C.O., 8/3/2018, at 8-10.)

Based on this rationale, the trial court denied and dismissed the Owners' declaratory judgment action by order and opinion dated August 3, 2018.

Thereafter, the Owners did not file a post-trial motion. (Reproduced Record (R.R.) at 5a.) Instead, they filed a notice of appeal, and the trial court directed them to file a statement of errors complained of on appeal in accordance with Pennsylvania Rule of Appellate Procedure (Pa.R.A.P.) 1925(b). In their statement, the Owners asserted that, for a number of reasons, the trial court erred in concluding that they created *de facto* condominiums and breached the Agreement.

The trial court rejected the Owners' assertions of error in its Pa.R.A.P. 1925(a) opinion dated October 16, 2018. Aside from addressing the Owners' issues in that opinion, the trial court also referred to its August 3, 2018 opinion, which, in turn,

7

referenced the January 14, 2015 opinion that the trial court issued in connection with what later became the appeal in *Cellucci I*.

## Discussion

As an initial matter, although not argued by the Association, we determine whether the Owners waived the issues that they raise in their appellate brief because they failed to file post-trial motions.

In *Gibraltar Rock, Inc. v. New Hanover Township*, 118 A.3d 461 (Pa. Cmwlth. 2015), this Court explained:

> It is now well settled that this Court may dismiss an appeal *sua sponte* based on an appellant's failure to properly preserve issues for appellate review. *See, e.g.*, *Commonwealth v. Edmondson*, 718 A.2d 751, 752 n.7 (Pa. 1998) ("This Court may raise the issue of waiver *sua sponte*."); *Tucker v. R.M. Tours*, 939 A.2d 343, 346 (Pa. Super. 2007), *aff'd*, 977 A.2d 1170 (Pa. 2009).
>
> The Pennsylvania Supreme Court has concluded that the filing of a post-trial motion is mandatory if a litigant wishes to preserve issues for further review. *L.B. Foster Co. v. Lane Enterprises, Inc.*, 710 A.2d 55 (Pa. 1998) (concluding that Pa.R.C.P. No. 227.1 "requires parties to file post-trial motions in order to preserve issues for appeal. If an issue has not been raised in a post-trial motion, it is waived for appeal purposes."). *See Municipal Authority of Hazle Township v. Lagana*, 848 A.2d 1089, 1092-93 (Pa. Cmwlth. 2004).
>
> Significantly, a litigant is required to file a post-trial motion following the entry of a decision/decree in a declaratory judgment action regardless of whether the case is decided on stipulated facts, after a bench trial, or some combination of both. *Motorists Mutual Insurance Company v. Pinkerton*, 830 A.2d 958, 964-65 (Pa. 2003) ("[W]e hold that post-trial declaratory judgment orders, just like other post-trial orders, are subject to the post-trial motion procedures in Rule 227.1."); *id.* at 964 ("[O]rders following trials on stipulated

8

> facts must be treated just like orders following other trials, i.e., in both situations, parties who wish to appeal must first file post-trial motions."). *See Warfield v. Shermer*, 910 A.2d 734, 738-39 (Pa. Super. 2006).

118 A.3d at 464.

In *Board of Supervisors of Willistown Township v. Main Line Gardens, Inc.*, 155 A.3d 39 (Pa. 2017), our Supreme Court recently reaffirmed the well-entrenched rule that where a party fails to file post-trial motions, that party waives all issues for appeal. *See id.* at 44 ("Post-trial motions serve an important function in the adjudicatory process because they provide the trial court with an opportunity to correct errors in its ruling and avert the need for appellate review . . . . [I]ssues not preserved . . . in post-trial motions . . . are waived.").

Here, following our remand in *Cellucci I*, the Association filed an answer to the Owners' complaint seeking declaratory relief. Subsequently, the case proceeded throughout the litigation process, the trial court held a bench trial, and on August 3, 2018, the trial court rendered a decision denying and dismissing the Owners' declaratory judgment action. (R.R. at 191a.) An examination of the original record and docket entries establishes that the Owners did not file a post-trial motion after the trial court issued its decision, but instead, filed a Pa.R.A.P. 1925(b) statement. (R.R. at 5a.) Although the Owners raised issues in their Pa.R.A.P. 1925(b) statement that they now seek to argue on appeal, we conclude that these issues are nonetheless waived because the Owners failed to file a post-trial motion before the trial court. *Diamond Reo Truck Co. v. Mid-Pacific Industries*, 806 A.2d 423, 429 (Pa. Super. 2002) ("The failure to file post-trial motions cannot be excused or replaced by the filing of a 1925(b) statement. Thus, issues that are waived for failure to file post-trial motions or for other reasons cannot be revived or saved simply by raising those issues in a 1925(b)

statement."), *accord Whitpain Homeowners Association v. Schiller*, 811 A.2d 1111, 1114 n. 4 (Pa. Cmwlth. 2002).

Because the Owners did not file a post-trial motion at the trial court level, the Owners did not preserve any issue for our review; thus, they are precluded from obtaining relief in this appeal. *See L.B. Foster Co.*, 710 A.2d at 55; *Gibraltar Rock, Inc.*, 118 A.3d at 464. Based upon this holding, we need not reach the merits of the Owners' appeal. *Coal Tubin' PA, LLC v. Cambria County Transit Authority*, 162 A.3d 549, 554 n.5 (Pa. Cmwlth. 2017); *cf. Commonwealth v. Metz*, 633 A.2d 125, 128 (Pa. 1993).[3]

---

[3] The Dissent contends that the Owners were not required to file post-trial motions under Pa.R.C.P. No. 227(1)(i) because we remanded the case for further proceedings in *Cellucci I* after reversing the trial court's decision sustaining the Association's preliminary objections. (Dissenting op. at 2-3.) However, Pa.R.C.P. No. 227(1)(i) applies only to the situation where a party or parties have already completed a trial, filed post-trial motions, appealed to a reviewing court, and the reviewing court then vacates/reverses and remands for further proceedings. Pertaining solely to this unique and particular context, Pa.R.C.P. No. 227(1)(i) was designed to clarify whether "a *second round* of post-trial motions would be required following a *new trial* conducted in remand proceedings." *Wolk v. School District of Lower Merion*, 197 A.3d 730, 740 n.14 (Pa. 2018) (first emphasis added, second emphasis in original); *see also Newman Development Group of Pottstown, LLC v. Genuardi's Family Markets, Inc.*, 52 A.3d 1233, 1246-47 (Pa. 2012) ("[T]o secure post-trial or appellate relief, post-trial motions must be filed . . . Obviously, if an appellate court remands for a new trial, the civil trial rules apply again, and in full force . . . The question before us, therefore, is whether the remand proceeding before the trial court in this case plainly constituted a 'trial' for purposes of the application of [Pa.R.C.P. No.] 227.1.").

Here, however, there never was a first round of post-trial motions because in *Cellucci I* we remanded to the trial court after reversing its grant of preliminary objections. Obviously, our remand order in *Cellucci* did not direct the trial court to conduct a new or second trial, and nor could it, because the parties were engaged in the earlier stages of the pleading process; thus, no trial had yet occurred, and the obligation to file post-trial motions was beyond the horizon. Ultimately, then, under the Dissent's proposed construction, a party would be exempt from filing post-trial motions when that party appeals from the grant of a demurrer, judgment on the pleadings, or summary judgment, a reviewing court reverses that decision and remands for the case to continue onward, and the case eventually goes to trial and results in a verdict for the first time. Respectfully, we do not believe that Pa.R.C.P. No. 227.1(1)(i) was intended to excuse a party from filing post-trial motions at the

However, if this Court were to address the Owners' contentions, we would conclude that they lack merit.

On appeal,[4] the Owners maintain that the trial court erred in assuming that they owned "condominiums" beginning with their acquisition of the properties in 1979. According to the Owners, "[t]he essential issue on appeal is whether [their] real estate was ever converted to condominium units in accordance with applicable Pennsylvania law after the [] Agreement of March 16, 2005." (Owners' brief at 13.) The Owners assert that the trial court failed to make this determination. However, the Owners acknowledge that in its August 3, 2018 opinion, the trial court reiterated the finding that it made in its January 14, 2015 opinion that the Owners created *de facto* condominiums in preparing to sell the units.

In addition, the Owners contend that the trial court should have focused on the language of the Agreement, but disregarded it, and instead emphasized their motive and intent in filing the DASREs. While recognizing that *de facto* condominiums may be created under the Act, the Owners assert that they did not create such condominiums because the DASREs were not an official, recorded declaration and, further, that the DASREs did not establish a common area or common elements, much less a common area or common elements where undivided ownership was vested

---

conclusion of a trial simply because the party succeeded in an earlier appeal from a pre-trial dispositional order that did not require the filing of post-trial motions. *See* Pa.R.C.P. No. 227.1(c), *Note* ("A motion for post-trial relief may not be filed to orders disposing of preliminary objections, motions for judgment on the pleadings or for summary judgment, motions relating to discovery or other proceedings which do not constitute a trial.").

[4] Our scope of review in an action for declaratory judgment is limited to determining whether the trial court's findings are supported by substantial evidence, whether an error of law was committed, or whether the trial court abused its discretion. *Kelso Woods Association, Inc. v. Swanson*, 753 A.2d 894, 898 n.11 (Pa. Cmwlth. 2000).

11

in the unit owners.  The Owners also assert that they could not have created *de facto* condominiums because they never sold the townhouses and, therefore, there was no actual division of real property or transfer of legal interest to third parties.

Initially, we observe that the statutory provisions of the Act are silent as to the existence or nonexistence of *de facto* condominiums.  True, section 3201 of the Act mandates the recording of a declaration as a requisite to proper formation of *de jure* condominiums.[5]  However, although the Owners did not file such a declaration, a Uniform Law Comment (Comment) to section 3201 expressly envisions the creation of *de facto* condominiums and plainly states that the Act will apply to such condominiums, even if no declaration has been filed.  Specifically, the Comment to section 3201 reads:

> A condominium has not been lawfully created unless the requirements of this section have been complied with. Nevertheless, a project which meets the definition of 'condominium' in Section 1-103(7) [68 Pa.C.S. §3103] is subject to this Act even if this or other sections of the Act have not been complied with.

68 Pa.C.S. §3201, Uniform Law Comments, n.3.

A Comment to section 3102 provides additional support for the proposition that the Act authorizes the formation of *de facto* condominiums.  In this Comment, the drafters explain that "the Act applies to all condominiums 'created' within the state after the Act's effective date" and, remarkably similar to the previous Comment, go on to state:

> "Creation" of a condominium pursuant to this Act occurs upon recordation of a declaration pursuant to Section 2-101

---

[5] Section 3201 of the Act states, in relevant part, that "[a] condominium may be created pursuant to this subpart only by recording a declaration executed . . . by all persons whose interests in the real estate will be conveyed to unit owners . . . ."  68 Pa.C.S §3201.

12

[68 Pa.C.S. §3201]; however, the definition of "condominium" in Section 1-103(7) [68 Pa.C.S. §3103] contemplates that *de facto* condominiums may exist, if the nature of the ownership interest fits the definition, and the Act would apply to such a condominium.

68 Pa.C.S. §3102, Uniform Law Comments, n.2.

Thus, in no uncertain terms, the Comments affirm positively that "*de facto* condominiums may exist," make clear that "the Act would apply to such a condominium," *id.*, and emphasize that *de facto* condominiums are "subject to [the] Act even if . . . other sections of the Act have not been complied with," 68 Pa.C.S. §3201, Uniform Law Comments, n.3.[6]

In interpreting the Act, both this Court and the Superior Court have not hesitated to rely upon and give persuasive weight to the Comments in accordance with section 1939 of the Statutory Construction Act of 1972 (SCA), 1 Pa.C.S. §1939.[7]

---

[6] Although the Comment to section 3201 does not expressly use the phrase "*de facto*," it is nonetheless a clear embodiment and codification of that principle. *Cf. Schmitt v. Potter Title & Trust Co.*, 61 Pa. Super. 301, 306 (1915) (concluding that a *de facto* corporation was created despite the fact that the promoter did not file the articles of incorporation as required by statute); *Clarity Software, LLC v. Financial Independence Group, LLC*, 51 F. Supp. 3d 577, 588-91 (W.D. Pa. 2014). After all, a *de facto* business or associational entity is, by its very nature, an entity that the law deems to have been effectively created when strict compliance with all the statutory requirements for formation have not occurred. *See In re Gibbs' Estate*, 27 A. 383, 384 (Pa. 1893) ("What is a corporation *de facto*? It is an apparent corporate organization . . . but lacking the creative fiat of the law."); *Trustees of Peninsula Annual Conference of the Methodist Church, Inc. v. Spencer*, 183 A.2d 588, 592 (Del. Ch. 1962).

[7] *See, e.g.*, *Gior G.P. Inc. v. Waterfront Square Reef, LLC*, 202 A.3d 845, 853 (Pa. Cmwlth. 2019) (relying upon the Comments, citing section 1939 of the SCA, and, for authority, quoting the introductory statement to the Act that was supplied by the Joint State Government Commission: "Since 45 sections of the Uniform Condominium Act are incorporated without change, the comments of the National Conference of Commissioners on Uniform State Laws will generally be helpful in the application of this act."); *Pleet v. Valley Greene Associates*, 538 A.2d 567, 569 (Pa. Super. 1988) (same); *see also Tivoli Condominium Association v. Rodin Parking Partners, L.P.*, 109 A.3d 344, 353-54 (Pa. Cmwlth. 2015); *Cunius v. Board of Assessment Appeals of Chester County*, 976 A.2d 635, 639 and 641 (Pa. Cmwlth. 2009); *MetroClub Condominium Association v. 201-59 North Eighth Street Associates, L.P.*, 47 A.3d 137, 145 (Pa. Super. 2012).

Following the trend in this case law, the Court accepts the above Comments at face value. Given their clear and unambiguous language, the Comments dictate that *de facto* condominiums may be formed under the Act so long as the developer's project satisfies the definitional requirements of a "condominium" under section 3103 of the Act.

Section 3103 defines a "condominium" as: "Real estate, portions of which are designated for separate ownership and the remainder of which is designated for common ownership solely by the owners of those portions. Real estate is not a condominium unless the undivided interests in the common elements are vested in the unit owners." 68 Pa.C.S. §3103. In paragraph 1 of the Agreement, the Association agreed "to withdraw with prejudice all claims of any right to collect condominium assessments from the [Owners] . . . unless and until such real estate is converted to condominium units in accordance with applicable Pennsylvania Law." (T.C.O., 8/3/2018, at 1.) Therefore, if the Owners created condominiums per section 3103, they necessarily breached the Agreement.

Here, the trial court found, *inter alia*, that approximately two years after the Agreement was executed, the Owners unilaterally executed the DASREs and Deeds in order to convert their three townhouses into six separate "[s]tacked [t]ownhouses." (T.C.O., 8/3/2018, at 3.) In a previous stage of this litigation, this Court upheld the trial court's finding "that Owners labeled [] six units as 'stacked townhouses' to circumvent the 2005 Agreement and avoid payment of six separate condominium fees." *Cellucci I*, 142 A.3d 1032, 1045 (Pa. Cmwlth. 2016). In the present litigation, the trial court made and reiterated that same finding. The trial court also found that the Owners advertised the sale of "six individually owned townhouses," (T.C.O., 8/3/2018, at 8), and stated in the DASREs that they "intend to sell the [s]tacked [t]ownhouses and

14

therefore desire[] to set forth herein the respective rights and duties of owners of [s]tacked [t]ownhouses with respect to one another." (R.R. at 68a.)

Consequently, for purposes of section 3103 of the Act, the Owners divided real estate into portions that they "designated for separate ownership." 68 Pa.C.S. §3103. This proposition remains true even though the Owners did not actually sell the "stacked townhouses." Under the case law, all that is required is that the developer/declarant hold title to the real estate that has been separated into individual spaces for units and, even if the units are not completed or sold, the developer/declarant remains subject to and liable for the assessments. *See Centennial Station Condominium Association v. Schaefer Company Builders*, 800 A.2d 379, 384 (Pa. Cmwlth. 2002) (noting that the Act "does not distinguish between completed and uncompleted units in the context of levying assessments for maintenance, repair and administration of common elements"); *Hatfield v. La Charmant Home Owners Association*, 469 N.E.2d 1218, 1221 (Ind. Ct. App. 1984) ("[A] developer who holds titles on unsold units is a unit owner and thus subject to the same assessments as any other unit owner.").

Moreover, the trial court found as fact that the DASREs were designed to "convey[] to the occupants an immediate interest in the use of the common area." (T.C.O., 1/14/2015, at 3.) The trial court further found that the Owners admitted that had they sold the six units comprising the "stacked townhouses," it would have been "up to [the] Association to determine the assessment fees for the new owners." (T.C.O., 8/3/2018, at 10.) Equally important, the trial court found that the Owners admitted on cross-examination "that each of the occupants of the six units [would] receive the same community services as those provided by [the Association] to all other tenants of the development." (T.C.O., 8/3/2018, at 5-6.)

15

Naturally, the only way the Association could provide the same services to, and impose the same assessment fees on, the would-be purchasers is if the Owners planned on conveying their interests in the common elements to the potential purchasers. (R.R. at 84a-85a.) Significantly, the unit owners of the Development were vested "with a proportionate undivided interest in the common elements," (R.R. at 127a), stated in terms of a percentage, and including, *inter alia*, a swimming pool, tennis courts, and a club house. (R.R. at 179a, 438a-49a, 453a.) Pursuant to the provisions in the underlying declaration for the Development, (R.R. at 407a-26a), the Owners, in executing the DASREs and Deeds, effectively created six units and attempted to convey their property interests in the common elements to the purported purchasers. (R.R. at 381a-404a, 407a-28a, 432a-40a.)

In this context, and from these facts, the trial court could reasonably infer that the Owners designated real property for common ownership by intending to create a "condominium" within a "condominium." Based on the facts and circumstances of this case, we cannot conclude that the trial court erred in interpreting the DASREs as being the means by which the Owners sought to convey their specific interests in the common elements to the would-be purchasers and that the would-be purchasers would be subjected to the assessments levied by the Association for, *inter alia*, the improvement and maintenance of the common elements. *See* R.R at 253a-56a. As a matter of law, this conclusion is not altered by the fact that the DASREs did not expressly mention the common elements or explicitly convey the Owners' interest in the common elements. *See The Union Labor Life Insurance Company v. Isle of Capri Associates, L.P.*, 202 A.3d 858, 867-68 (Pa. Cmwlth. 2019) ("[I]nterests in the common elements transfer automatically with the sale of the condominium unit. It is not necessary to describe the common element interests in the instrument conveying title

16

to that unit.").[8]  Again, it is immaterial that the Owners did not actually sell the "stacked townhouses."  *See Centennial Station Condominium Association*, 800 A.2d at 384; *Hatfield*, 469 N.E.2d at 1221.  Instead, the Owners qualify as declarants under the Act, capable of forming a condominium, by simply making "offers to dispose of [their] interest in a unit to be created."  68 Pa.C.S. §3103 (defining "Declarant, "Dispose," and "Offer").

## Conclusion

In sum, we conclude that the Owners failed to preserve any issue for our review and, therefore, this Court lacks a basis upon which to upset the trial court's

---

[8] The Dissent maintains that *de facto* condominiums were not created and reasons as follows: "Description of the common elements, and allocation of interest in a fraction or percentage of them and in the common expenses of the association, together with a specification of voting rights, is essential to the ability of the Association to make the condominium assessments it wishes to make here . . . . [I]t is critical that whatever [the] Owners filed after the [Agreement], the documents must contain . . . the common expenses of the association." (Dissenting op. a 5-6.)

We generally agree with this proposition and note with emphasis that the Association had imposed, and the Owners have paid, the assessments for six condominiums for 24 years straight, from the beginning of the Owners' ownership in 1979 until January 2003. (T.C.O., 8/3/2018, at 2-3.)  And, as mentioned above, the Owners admitted that had they sold the six units comprising the "stacked townhouses" after the Agreement was reached, it would have been "up to [the] Association to determine the assessment fees for the new owners." (T.C.O., 8/3/2018, at 10.)  Contrary to what the Dissent claims, the Association, in accordance with applicable provisions of the Act, imposes specific fees upon each unit owner and also fees for expenditures that the Association incurs,  (R.R. at 441a, 446a), and the Association's By-Laws has sections detailing and explaining the assessment procedure, voting rights, and the powers of the board of directors. (R.R. at 427a-33a.)

While the Dissent attempts to distinguish *Union Labor Life Insurance Company* on the ground that a declaration was recorded in that case, again, we reiterate that a declaration need not be filed in order to create *de facto* condominiums, and there is nothing in the record to suggest that the Owners intended to reserve their interests in the common elements to themselves had the "stacked townhouses" been sold.  Therefore, it must be presumed that the Owners intended to convey their interests in the common elements to the would-be purchasers as part and parcel of the "stacked townhouse" or condominium unit.

17

decision. Alternatively, we conclude the trial court did not err or abuse its discretion in disposing of the Owners' declaratory judgment action. Accordingly, we affirm the trial court's order denying the Owners' request for declaratory relief.

                                                      _____

                                                     PATRICIA A. McCULLOUGH, Judge

Judge Brobson did not participate in this decision.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John R. Cellucci and           :
Edna H. Cellucci, his wife,     :
          Appellants      :
                            :   No. 1094 C.D. 2018
          v.             :
                            :
Laurel Homeowners Association  :

## *ORDER*

AND NOW, this 18th day of July, 2019, the August 3, 2018 order of the Court of Common Pleas of Berks County is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John R. Cellucci and Edna H.    :
Cellucci, his wife,              :
            Appellants    :   1094 C.D. 2018
                     :   Argued: April 9, 2019
            v.         :
                     :
Laurel Homeowners Association  :

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

<u>OPINION NOT REPORTED</u>

**DISSENTING OPINION**
**BY JUDGE SIMPSON**               **FILED: July 18, 2019**


I respectfully dissent from the Majority's decision to affirm the Court of Common Pleas of Berks County (trial court) holding in favor of Laurel Homeowners Association (Association) and against John R. Cellucci and Edna H. Cellucci (collectively, Owners). There are two areas where I disagree with the Majority: 1) the application of waiver flowing from the failure of Owners to file a post-trial motion; and 2) the conclusion that Owners created condominiums by recording six "Declarations of Air Space Rights and Easements" (DASREs), thereby violating a 2005 settlement agreement.

## I. Waiver

As to the conclusion that Owners waived all appellate issues by failing to file a post-trial motion after the trial court dismissed their declaratory judgment

action, the Majority errs.[1]  The Majority fails to acknowledge the provisions of Pa. R.C.P. No. 227.1(i).  That Rule suspends the need for post-trial practice where, as here, an appellate court has remanded the case for further proceedings.  More specifically, the Rule provides:

> (i) <u>When an appellate court has remanded a case for further proceedings, a motion for post-trial relief relating to subsequent rulings in the trial court shall not be required</u> unless
>
> > (1) the appellate court has specified that the remand is for a complete or partial new trial, or
> >
> > (2) the trial court indicates in its order resolving the remand issues that a motion for post-trial relief is required pursuant to this rule.

<u>Id.</u> (emphasis added).  This subsection was added in 2015.  In *none* of the cases cited by the Majority was this rule applied, or even at issue.

This controversy was previously before this Court on appeal.  In <u>Cellucci v. Laurel Homeowners Association</u>, 142 A.3d 1032 (Pa. Cmwlth. 2016), we reversed the trial court's order in part, and we remanded the case for the Association's response to Owners' declaratory judgment action.  Our Order read in relevant part that "**the matter is REMANDED for further proceedings consistent with this opinion**." <u>Id.</u> at 1050-51 (emphasis in original).  There is nothing in our prior remand order that takes this case out of the general rule.  Also, the trial court did not indicate that a motion for post-trial relief was required.  Reproduced Record (R.R.) at 484a.

---

[1] The waiver issue was not raised by the parties or by the trial court.  Rather, it was raised by the Majority on its own motion, *after* oral argument, without affording the parties notice or an opportunity to respond.  Respectfully, I disagree with that procedure.

Because pursuant to Pa. R.C.P. No. 227.1(i), Owners were not required to file a motion for post-trial relief, the Majority errs when it concludes Owners waived all appellate issues by failing to file one.

## II. Violation of Settlement Agreement/Condominiums

As to the violation of a settlement agreement by creating condominiums through the recording of DASREs, the 2005 settlement agreement resolved outstanding litigation between the parties. Owners contended that the units they owned were not condominiums subject to condominium fee assessments, but the Association asserted the units were condominiums. In relevant part, the 2005 settlement agreement provided:

> [The Association] agrees to withdraw with prejudice all claims of any right to collect condominium assessments from [Owners] for real estate that they own in Building 26 of the Laurel Springs development unless and until such real estate is converted to condominium units in accordance with applicable Pennsylvania law.

R.R. at 60a (emphasis added). Essentially, by this settlement agreement, the Association agreed that Owners did not currently own property subject to condominium assessment, but Owners could be subject to such assessments in the future if Owners' real estate is converted to condominium units in accordance with applicable Pennsylvania law.

In 2007, Owners recorded the six DASREs, which the Association contends violated the settlement agreement and created *de facto* condominiums

subject to condominium assessments. The current action was initiated by Owners for declaratory relief as to whether they created condominium units.

## A. *De Jure* Condominiums

Regarding the creation of condominiums after the 2005 settlement agreement, it is undisputed that Owners did not file a declaration of condominium as described in Section 3201 of the Uniform Condominium Act (Condominium Act),[2] 68 Pa. C.S. §3201. Section 3201 states that the creation of a condominium under the Condominium Act occurs with the recording of a declaration. Id. Because this never happened, Owners did not create *de jure* condominiums.

Comment 3 of the Uniform Law Comments to Section 3201 of the Condominium Act, 68 Pa. C.S. §3201, states:

> A condominium has not been lawfully created unless the requirements of this section have been complied with. Nevertheless, a project which meets the definition of "condominium" in [68 Pa. C.S. §3103] is subject to this Act even if this or other sections of the Act have not been complied with.

Id., Uniform Law Cmt. 3 (emphasis added). The comment is clear that without the recording of a declaration, "[a] condominium has not been lawfully created …." Id.

The 2005 settlement agreement referred to conversion of Owners' real estate "to condominium units in accordance with applicable Pennsylvania law." R.R. at 60a. Since applicable Pennsylvania law holds that a condominium has not been lawfully created without the recording of a declaration described in Section

---

[2] 68 Pa. C.S. §§3101-3414.

3201 of the Condominium Act, this should end the inquiry, regardless of which statute applies to the project.

## B. *De Facto* Condominiums

Additionally, I disagree with the conclusion that Owners nevertheless created condominiums by filing the DASREs. This is because the interests created by the DASREs do not fit the definition of "Condominium" under the Condominium Act. Section 3103 of the Condominium Act defines "Condominium" as:

> Real estate, portions of which are designated for separate ownership and the remainder of which is designated for common ownership solely by the owners of those portions. Real estate is not a condominium unless the undivided interests in the common elements are vested in the unit owners.

68 Pa. C.S. §3103 (emphasis added).

Here, it is undisputed that the DASREs do not expressly mention common elements or explicitly convey Owners' interest in common elements. Maj. Op. at 17 ("As a matter of law, this conclusion is not altered by the fact that the DASREs did not expressly mention the common elements or explicitly convey the Owners' interest in the common elements."); see R.R. at 68a-77a (2007 DASRE). As explained below, whatever real estate interests were created by the DASREs, they cannot be assessable condominiums as defined in the Condominium Act.

Description of the common elements, and allocation of interest in a fraction or percentage of them and in the common expenses of the association, together with a specification of voting rights, is essential to the ability of the Association to make the condominium assessments it wishes to make here. Section

RES - 5

3208 of the Condominium Act, 68 Pa. C.S. §3208 ("Allocation of common element interests, votes and common expense liabilities"); Section 3314 of the Condominium Act, 68 Pa. C.S. §3314(b) ("Assessments for common expenses;" referring to Section 3208 common expense liability allocation). For these statutory reasons, it is critical that whatever Owners filed after the 2005 settlement agreement, the documents must contain an allocation of common element interests, including the common expenses of the Association, and a portion of the votes in the association; otherwise, no assessable condominium is created. Id.

Pursuant to the settlement agreement, the Association agreed that, in 2005, Owners' units were not assessable condominiums. Moreover, *after* the settlement agreement Owners did not describe the common elements at issue in a recorded declaration of condominium or in the DASREs. Further, they did not allocate a common element interest, or establish voting rights in a recorded declaration of condominium or in the DASREs. Under these circumstances, assessable condominiums could not be created in accordance with applicable Pennsylvania law.

The Majority cites Union Labor Life Insurance Company v. Isle of Capri Associates, L.P., 202 A.3d 858 (Pa. Cmwlth. 2019), for the proposition that it is not necessary to describe the common element interest in the instrument conveying title to that unit. Unfortunately, that is not a complete description of the holding in the case. What that decision actually holds is that "*after the declaration is recorded,*" a subsequent deed to a condominium unit need not again describe or refer to the common elements. Id. at 867-68 (emphasis added) (quoting Section

3204 of the Condominium Act, 68 Pa. C.S. §3204, "Description of units"). But, for there to be an assessable condominium, there has to be a written description of the common elements and allocation of common element interests and voting rights on record somewhere. Here, there is none after the 2005 settlement agreement. Because in Isle of Capri a declaration had been filed describing the common element interest, see id. at 861, and in this case no such declaration was filed by Owners, the cases are not comparable.

### III. Conclusion

I would hold that Owners did not create condominiums in violation of the 2005 settlement agreement. Consequently, the Association did not have a legal basis to assess condominium fees against Owners in disregard of the 2005 settlement agreement. For these reasons, I would reverse the trial court's order, thereby granting Owners' prayer for declaratory relief from the Association's assessment fee claims.

_____
ROBERT SIMPSON, Judge